Irwin A. **POPOWSKY**, Consumer Advocate, Petitioner,

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION**, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1996.
Decided Oct. 17, 1996.

Edmund J. Berger, Assistant Consumer Advocate, for Petitioner.

John A. Levin, Assistant Counsel, for Respondent.

Charles E. Thomas, Jr., for Intervenor, Equitable Gas.

Before PELLEGRINI and FRIEDMAN, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

Irwin A. Popowsky and the Office of Consumer Advocate (OCA) petitions for review of the decision of the Pennsylvania Public Utility Commission (PUC) approving a non-general rate increase for Equitable Gas Company (Equitable) to recover the current costs of complying with a change in accounting standards.

Equitable is a regulated public utility engaged in the purchase, distribution, sale and transportation of natural gas and serves approximately 250,000 customers in southwestern Pennsylvania. In December of 1990, the Financial Accounting Standards Board, the body which sets accounting standards for businesses in the United States, issued Statement of Financial Accounting Standards (SFAS) 106. SFAS 106 changed the generally accepted accounting principles to be used by large companies, including utilities, in accounting for post-retirement benefits other than pensions (termed "other post-employment benefits" or OPEBs), effective December 15, 1992.[1]

On November 10, 1994, Equitable filed Supplement No. 133 to its tariff requesting recovery of the incremental costs associated

---

**1.** In *Popowsky v. Pennsylvania Public Utility Commission,* 164 Pa.Cmwlth. 338, 642 A.2d 648, 649 (1994), *petition for allowance of appeal denied,* 543 Pa. 733, 673 A.2d 338 (1996), we explained the effect of SFAS 106 as follows:

SFAS 106 requires companies to move from the pay-as-you-go or cash basis for OPEBs to an accrual method of accounting based on the belief that OPEBs are a form of deferred compensation and the present cost should represent costs of obligations presently incurred. The change from the pay-as-you-go method to the accrual method creates transitional obligations, that is, the accumulated liability for OPEB expenses for both present employee and current retirees during the period up to the date of conversion to an accrual method which had been deferred for future periods under the pay-as-you-go basis.

The accrual method, simply put, requires employers to record as a liability the post-retirement benefits its employees earn during the course of the actual employment. The method treats post-retirement benefits other than pensions as a form of deferred compensation. *See* 52 Pa.Code § 69.351.

with complying with SFAS 106.[2] The tariff supplement proposed a revenue increase of over $1.7 million, to be recovered from core customers, and constituted a non-general rate filing.[3] Of the proposed increase, over $800,000 represented the accumulated incremental costs from January 1, 1993, through July 1, 1995, amortized over a three-year period. The other over $800,000 proposed represented the annual amount required on a going-forward basis under the accrual method.[4] The OCA filed a complaint.

After extended negotiations, the Office of Trial Staff and Equitable reached a settlement stipulation to which the OCA would not join. The settlement stipulation stated that Equitable should recover in rates, applicable to non-competitive customers, the annual going-forward amount of SFAS 106 expenses as soon after July 1, 1995, as possible. They also agreed that Equitable should carry on the books a regulatory asset in the amount of the accumulated incremental costs up to the effective date of recovery of the going-forward amount to be deferred to be considered in the next general rate proceeding. Under the settlement stipulation, the total bill for an average Equitable residential customer would increase approximately $3.18, or less than one cent per day. A new tariff supplement, proposing what was agreed upon in the settlement stipulation, was written to replace Supplement No. 133.

Because of the OCA's continued objection, hearings were held before the PUC's Administrative Law Judge (ALJ). The OCA contended that no increase in rates was needed because the SFAS 106 costs are offset by Equitable's savings on health care coverage and other items. It argued that Equitable has the burden to prove that it is not earning a reasonable return and that their rates were, in their entirety, just and reasonable.

The ALJ held that the standards for a non-general rate case under Section 1308(b) are not the same as the standards for a general rate case under Section 1308(d), stating:

> The OCA contends that the Commission must first determine that the rates proposed in the Joint Settlement are "just and reasonable" before they may be approved. We do not disagree with this basic proposition. However, the gravamen of the OCA's contention is that the Commission cannot determine that rates are just and reasonable unless the full panoply of Section 1308(d) revenue/expense and rate base/rate of return supporting data and testimony is provided. We concur with the Stipulating Parties that this is not the case. As demonstrated above, nothing in the Public Utility Code or the Commission's regulations supports the evidentiary standard proposed by the OCA for a Section 1308(b) non-general rate filing.

(ALJ's decision, p. 34).

2. Equitable filed a general rate action in 1991 which included a claim for incremental expenses associated with SFAS 106. However, because the PUC had not developed a policy on the issue, the matter was settled without any recovery in rates for incremental costs associated with SFAS 106. The settlement kept Equitable on the cost basis for ratemaking purposes but allowed it to utilize the accrual method for book purposes, which it did in January of 1993. The settlement provided that the agreement would not in any way prejudice any position the parties would subsequently take as to the recovery of those costs in later proceedings.

3. Section 1308(b) of the Public Utility Code, 66 Pa.C.S. § 1308(b) (a non-general rate increase is any increase that is not within the definition of a general rate increase). Section 1308(d) of the Code, 66 Pa.C.S. § 1308(d), defines a general rate increase as follows:
 As used in this part general rate increase means a tariff filing which affects more than 5% of the customers and amounts to in excess of 3% of the total gross annual intrastate operating revenues of the public utility.
 The proposed increase here was 0.59% over existing gross annual interstate revenues, and all parties agree the tariff constituted a non-general rate increase.

4. The amount projected by the company to be required on an annual basis under the accrual method included not only the earned cost of post-retirement benefits other than pensions for current employees, but also the amortized cost of the transitional obligation, that is, the amount needed to catch up for accruals not previously made for both current employees and retirees. Equitable chose, in January, 1993, when it changed its books to the accrual method, to amortize the transitional obligation over 20 years. The PUC's regulation permits a utility to seek recovery in future rate proceedings for the regulatory asset assigned the transitional obligation "to the extent the costs are prudently incurred and demonstrated to be reasonable." 52 Pa.Code § 69.351.

The ALJ recommended approval of the settlement, which found an amount of $2,617,244 as Equitable's accumulated incremental SFAS 106 expense for January 1, 1993, through July 1, 1995, and permitted the recovery of an annual going-forward amount for incremental SFAS 106 costs of $876,206 through an increase in non-competitive rates. The PUC adopted the recommended decision of the ALJ as its own and denied the OCA's exceptions. The OCA then filed this appeal.

 It is uncontested that every rate charged by a public utility, whether through a tariff or supplement filing with the PUC, must be "just and reasonable". Section 1301 of the Code, 66 Pa.C.S. § 1301.[5] The PUC has broad discretion in determining whether rates are reasonable. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 42 Pa.Cmwlth. 242, 400 A.2d 672 (1979). Moreover, the PUC is vested with discretion to decide what factors it will consider in setting or evaluating a utility's rates. *Popowsky v. Pennsylvania Public Utility Commission*, 669 A.2d 1029, 1040 (Pa.Cmwlth.1995). This court's scope of review is limited to determining whether the PUC's findings of fact are supported by substantial evidence, whether the PUC made an error of law or whether constitutional rights were violated. *Popowsky*, 642 A.2d at 650.

Non-general rate filings are addressed in Section 1308(b) of the Code, while general rate filings are dealt with in Section 1308(d) of the Code. Both sections set forth the procedure for changing rates, the time limitations for the suspension of new tariffs and the PUC's actions. Section 1308(b) of the Public Utility Code (Code), 66 Pa.C.S. § 1308(b), provides:

Whenever there is filed with the commission by any public utility any tariff stating a new rate, *the commission may*, either upon complaint or upon its own motion upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and pending such hearing and the decision thereon, the commission, upon filing with such tariff and delivering to the public utility affected thereby a statement in writing of its reasons therefor, may, at any time before it becomes effective, suspend the operation of such rate for a period not longer than six months from the time such rate would otherwise become effective, and an additional period of not more than three months pending such decision.... This subsection shall not apply to any tariff stating a new rate which constitutes a general rate increase as defined in subsection (d). (Emphasis added).

Section 1308(d) of the Code provides:

Whenever there is filed with the commission by any public utility ... any tariff stating a new rate which constitutes a general rate increase, *the commission shall promptly enter into an investigation and analysis of said tariff filing* and may by order setting forth its reasons therefor, upon complaint or upon its own motion, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and the commission may, at any time by vote of a majority of the members of the commission serving in accordance with law, permit such tariff to become effective, except that absent such order such tariff shall be suspended *for a period not to exceed seven months from the time such rate would otherwise become effective....* As used in this part general rate increase means a tariff filing which affects more than 5% of the customers and amounts to in excess of 3% of the total gross annual intrastate operating revenues of the utility. (Emphasis added).

The differences between the two subsections of 1308 include the length of any suspension of rates, the setting of temporary rates for non-general rate filings, and the mandate that the PUC is required to investigate every general rate increase filing, whereas non-general rates may become effective based on a determination without a hearing because the PUC is given the discretion to initiate a hearing on its own motion. In creating a two-pronged procedure based on the size of the rate increase, the General

---

**5.** Section 1301 provides:

Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations and orders of the commission.

*See also* Section 315 of the Code, 66 Pa.C.S. § 315.

Assembly revealed its intention that the full regulatory oversight may not be necessary for minor rate increases and left that decision to the PUC.

To implement the statutory structure, the PUC set forth in its regulations the evidence which must be produced by the public utility to support a rate case. Under 52 Pa.Code § 53.52(b), any utility filing a tariff or supplement must submit certain basic information, including reasons for the rate change, operating income for a 12–month period, the number of customers affected and the amount of the change on an annual basis. In addition to the basic information, those filings for a general rate increase require more elaborate supporting information and exhibits, including the book value of all property, a balance sheet and a calculation of the rate of return and anticipated rate of return. 52 Pa.Code §§ 53.52(c) and 53.53.

■ Although in its brief the OCA seems to argue that the same evidentiary burden should apply to Equitable in this contested, non-general rate case as in a general rate case, requiring it to provide specific information on each aspect of its capital and rate of return, it abandoned that argument at oral argument. In response to such an argument, we would agree with the PUC that the statutory and regulatory scheme do not make the same full-blown standards applicable. If such a high standard applied, there would be no significant difference between non-general rate filings under Section 1308(b) and general rate filings under Section 1308(d). To the contrary, because of the modest nature of non-general rate filings, as required by the statute, we believe the PUC may determine whether the public utility's rates are just and reasonable based on the general information required under 52 Pa.Code § 53.52(b). That the non-general rate filing may be contested does not increase Equitable's evidentiary burden or limit the PUC's discretion.

■ The OCA now contends that the PUC erred in allowing Equitable to increase its rates without making specific findings on a fair rate of return for Equitable or that the rate increase was necessary to provide the utility with such a fair rate of return, in light of the health care and other offsets, or would

otherwise produce just and reasonable rates. The PUC must make all findings necessary to determine whether the rates are just and reasonable. *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 496, 491 A.2d 94 (1985). A factfinder, under the Administrative Agency Law, is required to include findings necessary to resolve the issues raised by the evidence and relevant to the decision. *See* 2 Pa.C.S. § 507; *Scranton Garment Co. v. Workmen's Compensation Appeal Board*, 33 Pa.Cmwlth. 190, 381 A.2d 210 (1977). Moreover, Section 703(e) of the Code requires the PUC to make findings that are "in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding". 66 Pa.C.S. § 703(e). *See Popowsky*, 669 A.2d at 1040.

Equitable presented evidence that its current rate of return, for the 12–month period ending March 31, 1995, is 8.48%, with an annualized and normalized return on common equity of 7.87%. Equitable also presented evidence of savings in other areas, such as health care costs and how those savings were used to offset expenses in other areas and those related to SFAS 106, but that they were insufficient to totally offset those increased expenses, supplying accounting data to substantiate the amount needed in order to comply with SFAS 106. In the ALJ's decision, which was adopted by the PUC, the ALJ reviewed this evidence, which indicates his acceptance of it.

■ The ALJ also incorporated that part of Equitable's brief which rebutted the testimony of the OCA's expert and addressed the adequacy of their rate of return. Equitable's assertions in this part of their brief were that their rate of return was inadequate and that the health care and other savings did not offset the costs of complying with SFAS 106 as well as other expenses. Although there is no specific section in the ALJ's decision delineating these statements as findings of facts, absence of formal findings will not necessarily preclude review. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 106 Pa.Cmwlth. 437, 526 A.2d 1243 (1987), *petition for allowance of appeal denied*, 517 Pa. 628, 538 A.2d 880 (1988). Nor

will reliance on one party's submissions suggest that the PUC did not perform a review of the evidence and reach findings. *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission,* 155 Pa.Cmwlth. 537, 625 A.2d 741 (1993). In the context of the entire decision, it is clear that the parts of Equitable's brief adopted were meant as findings of the facts asserted therein and the rejection of the contradictory evidence offered by the OCA. Although we caution the PUC that it could avoid unnecessary appeals if its findings were explicit and more specific and comprehensive, the PUC's decision provided the bare minimum this court needs in order to perform our appellate review.

Because the PUC's determination that Equitable's rates are just and reasonable was based on findings concerning its rate of return and off-setting savings, which were in turn supported by substantial evidence of record, we will not disturb its exercise of discretion. Accordingly, the order of the PUC approving the proposed non-general rate increase, as modified in the settlement stipulation, is affirmed.

## *ORDER*

AND NOW, this 17th day of 1996, the order of the Pennsylvania Public Utility Commission, entered August 31, 1995, at Docket No. R–00943246, is affirmed.

McGINLEY, J., did not participate in the decision of this case.