IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanya J. McCloskey, : 
Acting Consumer Advocate, : 
           Petitioner : 
 : 
 : 
       v. : 
 : 
 : 
Pennsylvania Public Utility : 
Commission, :   No. 1012 C.D. 2014
         Respondent :   Argued: June 18, 2015

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BERNARD L. McGINLEY, Judge (P.)
           HONORABLE P. KEVIN BROBSON, Judge

OPINION
BY JUDGE McGINLEY            FILED: November 3, 2015

## BACKGROUND

Tanya J. McCloskey, Acting Consumer Advocate from the Office of Consumer Advocate (OCA) petitions for review of the Opinion and Order of the Pennsylvania Public Utility Commission (Commission) entered May 22, 2014, in the matter of Columbia Gas of Pennsylvania, Inc.'s (Columbia) Petition for Approval of a Distribution System Improvement Charge (DSIC) to recover the costs associated with certain distribution system improvement projects.[1]

---

[1] On September 12, 2014, OCA filed an Application for Relief requesting, among other administrative matters, consolidation of 1012 C.D. 2015 & 1358 C.D. 2014 pursuant to Pa. R.A.P. 123 (Application for Relief) and Pa. R.A.P. 513 (Consolidation of Multiple Appeals). This Application for Relief asserted that both appeals pertain to Commission orders addressing the same question of law; that no party to either appeal will be prejudiced by consolidation and that consolidation will reduce the cost of litigating these appeals for the parties.

On September 17, 2014, this Court denied OCA's Application for Relief because the appeals arise from separate orders and do not involve the same certified record. However, **(Footnote continued on next page…)**

At the outset, this Court notes that in Pennsylvania, the age and condition of the infrastructure of utilities has reached the point where the balance between repair and replacement has now tipped in the direction of replacement. Past actions of the utilities have generally demonstrated that they were pursuing a balanced course between maintenance and replacement schedules.

However, much of the infrastructure has now reached the point where repairs have diminishing returns and replacement is the wiser choice. In order to address this concern, the Commission encouraged utilities to plan and implement accelerated replacement of their aging infrastructure. At the same time, however, it was understood by utilities making infrastructure investment that they would be unable to adjust the rates they charged to their customers between traditional ratemaking cases to recover those specific infrastructure investment costs in a timely manner.[2]

Therefore, on February 14, 2012, Act 11 was signed into law.[3] Among other things, Act 11 repealed the prior statute that permitted *only* water utilities to charge a DSIC (66 Pa. C.S. § 1307(g)), and authorized natural gas distribution, electric distribution, *as well as* water and wastewater utilities to

---

**(continued…)**

because both actions involve similar legal issues, this Court ordered that the matters be listed for consideration by the Court *seriatim*.

[2] Under traditional ratemaking, utilities may not change rates charged to customers outside of a base rate case. Thus, the Public Utility Code (Code) 66 Pa. C.S. §§101-3316, did not allow utilities to recover infrastructure replacement costs outside the confines of a base rate proceeding. See generally 66 Pa. C.S. § 1308.

[3] Act 11 of February 14, 2012, P.L. 72, 66 Pa. C.S. §§315; 1350-1360; 3301. Act 11 amended Chapters 3, 13 and 33 of the Code.

charge a DSIC. Now, these utilities have access to an alternative ratemaking mechanism whereby the utilities may recover costs related to repair, improvement and replacement of eligible projects outside of a ratemaking case. See 66 Pa. C.S. §§1350-1360.

Section 1353(a) of the Code, 66 Pa. C.S. §1353(a) states in pertinent part that:

> [A] utility may petition the [C]ommission, or the [C]ommission after notice and hearing, may approve the establishment of a [DSIC] to provide for the timely recovery of the reasonable and prudent costs incurred to repair, improve or replace eligible property in order to ensure and maintain adequate, efficient, safe, reliable and reasonable service.

66 Pa. C.S. §1353(a).

Section 1352 of the Code, 66 Pa. C.S. §1352, states that, as a prerequisite to the implementation of a DSIC, a utility must file a long-term infrastructure improvement plan (LTIIP).

## PROCEDURAL HISTORY

### The LTIIP

On December 7, 2012, Columbia filed a LTIIP as required under Section 1352(a) of the Code, 66 Pa. C.S. §1352 Act 11.[4] Reproduced Record (R.R.) at 63a; see also March 14, 2013, Opinion and Order of the Commission (Commission Opinion and Order, March 14, 2013), at 2.[5,6] On December 27,

---

[4] 66 Pa. C.S. §1352(a).

[5] The Commission Opinion and Order, March 14, 2013 is incorporated by reference in the Reproduced Record at iii as Appendix C of the OCA Brief.

2012, comments regarding Columbia's LTIIP were filed by Columbia Industrial Intervenors (CII). Commission Opinion and Order, March 14, 2013 at 2. On January 4, 2013, the OCA also filed Comments regarding Columbia's LTIIP. Commission Opinion and Order, March 14, 2013 at 3. On January 22, 2013, Columbia filed Reply Comments to the OCA Comments [on Columbia's LTIIP]. Commission Opinion and Order, March 14, 2013 at 4.

### The DSIC

On January 3, 2013, Columbia filed its Petition for Approval of its DSIC in accordance with Section 1353(b) of the Code, 66 Pa. C.S. §1353(b). R.R. at 6a. On January 22, 2013, CII filed a Petition to Intervene and Answer regarding Columbia's Petition for Approval of its DSIC. R.R. at 193a.

Also on January 22, 2013, the Pennsylvania Office of Small Business Advocate (OSBA) filed a Notice of Intervention and an Answer to Columbia's Petition for Approval of its DSIC. Commission Opinion and Order, March 14, 2013 at 3. On that same date, Pennsylvania State University (Penn State) filed a Petition to Intervene in Columbia's Petition for Approval of its DSIC. Commission Opinion and Order, March 14, 2013 at 3.

Thereafter, on January 30, 2013, G. Thomas Smeltzer, an individual customer, filed a Formal Complaint in Opposition to Columbia's Petition for

**(continued…)**

[6] The Reproduced Record incorrectly parenthesizes the date of this document as "March 13, 2013" Commission Opinion and Order. For purposes of accuracy, this Court will reference this document as the Commission Opinion and Order, March 14, 2013.

4

Approval of its DSIC. Commission Opinion and Order, March 14, 2013 at 3. On March 20, 2013, the Commission's Bureau of Investigation and Enforcement (I&E) filed a Notice of Appearance. Commission Opinion and Order, March 14, 2013 at 3.[7]

### Prior Decisions

By the Commission Opinion and Order, March 14, 2013, the Commission approved Columbia's proposed LTIIP and DSIC and authorized Columbia to begin charging its DSIC effective April 1, 2013. Commission Opinion and Order, March 14, 2013 at 31, 46-47. However, the Commission approved Columbia's DSIC pending final resolution of the issues raised in the parties' filings and identified in the Commission Opinion and Order, March 14, 2013.[8] That Order of the Commission further directed that DSIC revenues be subject to refund or recoupment based upon resolution of the issues. That Commission Opinion and Order, March 14, 2013 also referred resolution of the issues to the Office of Administrative Law Judges (OALJ). See R.R. at 198a.

On March 6, 2014, [9] the OALJ, in its Recommended Decision and Order (Recommended Decision and Order, March 6, 2014),[10] approved the DSIC

---

[7] Letters expressing opposition to Columbia's Petition for Approval of its DSIC were also received from other individual utility customers. Commission Opinion and Order, March 14, 2013 at 3.

[8] The issues raised by the parties and identified in the Commission Opinion and Order, March 14, 2013 included: the recovery of costs related to customer-owned service lines; the impact of accumulated deferred income taxes (ADIT) associated with DSIC investments; the calculation for the state income tax component of the DSIC revenue requirement; and the return on equity. Commission Opinion and Order, March 14, 2013 at 4.

[9] The OALJ's Recommended Decision and Order is dated February 25, 2014. However, throughout the parties' filings, references are made to an "issue date" of "March 6, 2014". For **(Footnote continued on next page…)**

5

calculation proposed by Columbia.[11]  That Recommended Decision and Order, March 6, 2014, also required that Columbia apply the DSIC equally to all of its customer classes but held that Columbia may modify the charge of a DSIC to Columbia's customers with competitive rate alternatives.[12]  Recommended Decision and Order, March 6, 2014 at 39, 64, 75, 78.

Exceptions and Replies to the Exceptions to the Recommended Decision and Order of the OALJ were filed by OCA, Columbia and Penn State. May 22, 2014 Opinion and Order of the Pennsylvania Public Utility Commission (Opinion and Order, May 22, 2014) at 1.[13]  CII filed letters indicating that they would not file exceptions to the Recommended Decision and Order of the OALJ or Replies to the Exceptions.  Opinion and Order, May 22, 2014 at 5.

---

**(continued…)**

purposes of clarity, this Court will refer to the March 6, 2014, date for the OALJ's Recommended Decision and Order.

[10] The Recommended Decision and Order, March 6, 2014, is incorporated by reference in the Reproduced Record at iii as Appendix B of the OCA Brief.

[11] The DSIC calculation proposed by Columbia and approved by the OALJ in its Recommended Decision and Order of March 6, 2014, does not include ADIT on its DSIC utility plant as an offset to the plant.  However, that DSIC calculation proposed by Columbia and approved by the OALJ in its Recommended Decision and Order of March 6, 2014, does include the calculation of state income taxes.

[12] The term "competitive rate alternative" means that in Pennsylvania, a consumer of natural gas can choose the company that generates the natural gas - also known as the natural gas supplier.  The consumer has the ability to switch to a competing supplier that can offer the lowest price.  All Pennsylvania residents have the right to choose their natural gas supplier, but the ability to switch depends on where the resident lives as competitive offers may not be available in all areas.  Pennsylvania Public Utility Commission, Consumer Info, Natural Gas, PAGasSwitch Shopping, http://www.puc.pa.gov/consumer_info/natural_gas/natural_gas_ shopping/gas_shopping_tool.aspx (last visited September 22, 2015).

[13] The May 22, 2014 Opinion and Order is incorporated by reference in the Reproduced Record at ii as Appendix A of the OCA Brief.

Thereafter, by Opinion and Order dated, May 22, 2014, the Commission concluded that Columbia was not required to include an ADIT adjustment in its DSIC calculation and that Columbia was permitted to include the state income tax "gross-up"[14] in its DSIC calculation. Accordingly, the Commission denied the filed Exceptions and adopted the Recommended Decision and Order of the OALJ dated March 6, 2014. Opinion and Order, May 22, 2014 at 58-59.

On June 19, 2014, the OCA filed a Petition for Review of the Commission's Order. The matter is now before this Court.

## **FACTUAL BACKGROUND**

Columbia is a natural gas distribution utility with approximately 415,000 customers in portions of twenty-six counties in Pennsylvania. Commission Opinion and Order, March 14, 2013 at 2. Columbia is subject to the Code and regulated by the Commission. Commission Opinion and Order, March 14, 2013 at 2. As of January 1, 2012, Columbia had approximately 1,751 miles of bare steel main pipe.[15] Columbia Exhibit NJDK-2, at 2; R.R. at 65a. Columbia also had 66,000 bare steel services. Columbia Exhibit NJDK-2, at 2; R.R. at 65a.

---

[14] The term "gross-up" is a business term that refers to a payment made with some type of compensation for taxes built into the payment. To increase a net amount to include deductions, such as taxes, that would be incurred by the receiver. Business Dictionary.com, copyright 2015, http://www.businessdictionary.com/definition/gross-up.html. A "gross-up" clause is a provision in a contract which provides that all payments must be made in the full amount, free of any deductions or withholdings, and without exercising any right of set-off.

[15] As of January 1, 2012, Columbia also had forty-six miles of cast iron main pipes and 113 miles of wrought iron main pipes. Columbia Exhibit NJDK-2, at 2; R.R. at 65a.

This bare steel is at the end of its useful life and must be replaced. See Columbia Exhibit NJDK-2, at 2; R.R. at 65a-75a.

The federal government has prohibited further installation of bare steel pipe for natural gas distribution systems. Columbia Exhibit NJDK-2, at 3; R.R. at 66a. Columbia has replaced 500,000 feet of bare steel main annually for five (5) years, at a projected cost of approximately $120 million annually on this infrastructure replacement. Commission Opinion and Order, March 14, 2013 at 16, 18.

In order to recover the costs associated with these distribution system improvement projects through the permitted surcharge under Section 1353(a) of the Code, 66 Pa. C.S. §1353(a), Columbia filed its DSIC and LTIIP. See generally R.R. at 6a-41a, 63a-192a. Pursuant to the Commission's May 22, 2014 Opinion and Order, Columbia did not include an adjustment to its DSIC-eligible plant for ADIT in its proposed DSIC calculation, but did include the state income tax "gross-up" clause. Opinion and Order, May 22, 2014 at 38.

## ISSUES

The issues, as summarized, are whether the Commission erred in not requiring Columbia to include an ADIT tax adjustment in its DSIC calculation and whether Columbia is permitted to include the state income tax gross-up in its DSIC calculation.

### Tax Adjustment--ADIT

The OCA contends that the Commission erred as a matter of law when it approved a DSIC calculation that did not recognize ADIT tax benefits recovered through the surcharge and generated by the investment in the replaced

8

parts of its infrastructure. OCA Brief at 22. OCA asserts that Pennsylvania law, as well as established ratemaking policy, requires that Columbia's tax benefits be reflected in the rates paid by its ratepayers. 66 Pa. C.S. §1301; R.R. at 242a; OCA Statement No. 1 at 6, 10.

> Section 1301 of the Code, 66 Pa. C.S. §1301 provides:
>
> Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the commission. Only public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service were rendered by a public utility.

OCA asserts that the investment recovered in the DSIC rate must be reduced to reflect ADIT related to that investment, otherwise, OCA argues, ratepayers will pay the utility as if all of its DSIC investment was funded by investors, when in fact, a portion of the investment was financed at zero cost using deferred federal income taxes. Barasch v. Pa. Public Utility Commission (UGI), 493 A.2d 653 (Pa. 1985); OCA Brief at 22-23. OCA further asserts that the state income tax rate used to calculate DSIC revenue requirements must reflect the state income tax expense actually paid, not hypothetical taxes. Barasch v. Pa. Public Utility Commission (Penn Power), 491 A.2d 94, 98, 101, 105-107 (Pa. 1985).

OCA argues that Columbia must deduct ADIT associated with a DSIC-eligible plant because failing to do so would improperly allow Columbia to earn a return on dollars that its shareholders did not invest. Consequently, OCA

9

contends that the Commission committed an error of law[16] by declining to adopt its recommendation to include OCA's proposed tax adjustments to Columbia's DSIC calculation because its adjustments are required by Section 1301 of the Code, 66 Pa. C.S. §1301 and the general provisions of Chapter 13 of the Code that require rates to be just and reasonable. See 66 Pa. C.S. §1301; see also Popowsky v. Pa. Public Utility Commission (PPL), 695 A.2d 448, 455 (Pa. Cmwlth. 1997).

Conversely, the Commission asserts that to include an ADIT adjustment in a DSIC surcharge, "which does not require the same analysis, inputs, elements or evidence as the calculation for a traditional general rate increase" of a Section 1308(d) Code base rate proceeding, would not be just and reasonable. Commission Brief at 24. Popowsky v. Pa. Public Utility Commission (Wastewater DSIC), 869 A.2d 1157 (Pa. Cmwlth. 2005); see Popowsky v. Pa. Public Utility Commission (Equitable), 683 A.2d 958, 962 (Pa. Cmwlth. 1996); see also Popowsky v. Pa. Public Utility Commission (Purchased Water Surcharge), 13 A.3d 583 (Pa. Cmwlth. 2011). The Commission argues that in enacting Act 11, the General Assembly envisioned a simple and straightforward process of establishing rates for the DSIC surcharge that would be easy to calculate and audit; did not require a comprehensive full rate case analysis and which would not be

---

[16] The Commonwealth Court's scope of review of a Commission order is to determine whether the Commission's findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Popowsky v. Pa. Public Utility Commission, 910 A.2d 38 (Pa. 2006). The standard of review to be applied when reviewing a Commission decision is that the Court should not substitute its judgment for that of the Commission when substantial evidence supports the Commission's decision on a matter within the Commission's expertise. City of Lancaster (Water) v. Pa. Public Utility Commission, 769 A.2d 567 (Pa. Cmwlth. 2001), citing Popowsky, 706 A.2d at 1201. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. Borough of E. McKeesport v. Special/Temporary Civil Service Commission, 942 A.2d 274, 281 (Pa. Cmwlth. 2008).

inconsistent with the objective of Act 11.  Commission Brief at 24; <u>See also</u> Opinion & Order, May 22, 2014 at 35-36.

The Commission further asserts that the earnings cap of Section 1358 was the mechanism that the General Assembly established in Act 11 to ensure that the rate for the DSIC surcharge mechanism was just and reasonable.  The Commission asserts that the prior water DSIC and the current Act 11 utilities DSIC apply the same procedures to ensure the reasonableness of the surcharge, which included the earning cap and a reset of the DSIC surcharge.  66 Pa. C.S. §1358.  Therefore, in assessing whether the DSIC rate was just and reasonable, the Commission argues that the DSIC charge and the limiting provisions of the customer protections under Act 11 must be considered together.

Section 1358 of the Code, 66 Pa. C.S. §1358, sets forth the following customer protection provisions:

(a) Limitation.--As follows: …

(b) Charge reset.--
(1) The distribution system improvement charge shall be reset at zero as of the effective date of new base rates that provide for prospective recovery of the annual costs previously recovered under the distribution system improvement charge.

(2) After the reset date under paragraph (1), only the fixed costs of new eligible property that have not previously been reflected in the utility's rate base shall be reflected in the quarterly updates of the distribution system improvement charge.

(3) The distribution system improvement charge shall be reset at zero if, in any quarter, data filed with the commission in the utility's most recent annual or quarterly earnings report

11

show that the utility will earn a rate of return that would exceed the allowable rate of return used to calculate its fixed costs under the distribution system improvement charge.

Section 1358(c) of the Code, 66 Pa. C.S. §1358(c), further specifically states "unless provided otherwise, the statutory provisions regarding the computation of the DSIC and customer protection provisions shall not be construed as limiting the existing ratemaking authority of the [C]ommission."

In Duquesne Light Co. v. Barasch, 488 U.S. 299 (1989), Duquesne Light Company asserted that it was unconstitutionally unjust and unreasonable for rates to exclude recovery of the cost of a canceled nuclear power plant. The United States Supreme Court noted that in determining just and reasonable rates, "the economic judgments required in rate proceedings are often…complex and do not admit of a single correct result." Duquesne Light Company, 488 U.S. at 314. The United States Supreme Court went on to find that the disallowance of a single element was not the appropriate standard for determining whether rates were just and reasonable, due, in part, to the fact that "[e]rrors to the detriment of one party may well be canceled out by countervailing errors or allowances in another part of the rate proceeding." Duquesne Light Company, 488 U.S. at 314.

In rejecting that there was a single method of valuation that would produce just and reasonable utility rates, the United States Supreme Court in Duquesne Light Company held:

> [C]ircumstances may favor the use of one ratemaking procedure over another. The designation of a single theory of ratemaking as a constitutional requirement would unnecessarily foreclose alternatives which could benefit both consumers and investors. The Constitution within broad limits leaves the States free to decide what rate setting

12

>methodology best meets their needs in balancing the interests of the utility and the public.

Duquesne Light Company, 488 U.S. at 316.

The United States Supreme Court in Duquesne Light Company acknowledged that there were many ways to achieve rates that were just and reasonable, and went on to find that the disallowance of a single element was not the appropriate standard for determining whether rates were just and reasonable; however, a determination regarding whether rates were just and reasonable must involve a look at the total effect of the rates. Duquesne Light Company, 488 U.S. at 316.

The courts in Pennsylvania have similarly concluded that there is no single way to arrive at just and reasonable rates and that the Commission is "vested with discretion to decide what factors it will consider in setting or evaluating a utility's rates." Popowsky v. Pa. Public Utility Commission (Pa. Cable Television Association), 669 A.2d 1029, 1040 (Pa. Cmwlth. 1995); see generally Popowsky v. Pa. Public Utility Commission (Equitable), 683 A.2d 961 (Pa. Cmwlth. 1996). In Equitable, this Court considered an appeal from a Commission order that authorized a non-general rate increase in a voluntary rate change. Section 1308(d) of the Code, 66 Pa. C.S. §1308(d). Equitable did not undertake the full calculation associated with a base rate proceeding under Section 1308(d) of the Code, 66 Pa. C.S. §1308(d). The Court concluded that the Commission could determine whether a non-general rate increase was just and reasonable based upon findings concerning the utility's rate of return and offsetting savings.

13

In the current controversy, although OCA requested the inclusion of specific additional base rate adjustments to add to the DSIC calculation, the DSIC also excluded adjustments which would possibly benefit Columbia. Consequently, even if there was a deviation in the elements and inputs to the calculation of the rate, the primary focus was and should have been on the overall effect of the rate, as a whole, and not on the omission of individual components from the rate calculation. The bottom line is that the appropriate inquiry is whether the total effect of the surcharge results in unjust and unreasonable rates. See Barasch, 488 U.S. at 314.

Consequently, even without the inclusion of specific additional base rate adjustments in the ADIT calculation, Columbia's DSIC surcharge mechanism, which was an alternative ratemaking mechanism, was consistent with the implementation of Act 11. Applicable law only requires that the DSIC surcharge mechanism *as a whole* be just and reasonable.

## State Income Tax "Gross-Up"

OCA next argues that the Commission incorrectly allowed Columbia to recover state income taxes that it did not incur in the DSIC revenue requirements determination in violation of the language of the Code[17] and the actual state taxes paid.[18] OCA asserts that Columbia developed its pre-tax rate of return by grossing up the equity component of its overall return in order to account

---

[17] Section 1308(d) of the Code, 66 Pa. C.S. §1308(d).

[18] Sections 167 and 168 of the Internal Revenue Code, 26 U.S.C. §§167-168 (I.R.C. 1954), prohibit utilities such as Columbia from "flowing through" federal tax reductions as a reduction in tax expense in rates on a current basis. Instead those deferred *federal* income tax benefits are treated as a reduction to the base rates on which Columbia (in this instance) was authorized to earn a return. R.R. at 241a-242a; OCA Statement No. 1 at 5.

14

for both state and federal income taxes at the full statutory rates. R.R. at 231a; CPA Exhibit NJDK-S2; R.R. at 244a; OCA Statement No. 1 at 8; OCA Brief at 32.

OCA argues that the amount of state income taxes that Columbia will pay on DSIC revenues, however, will not be the full statutory rate as its tax obligation will be affected by tax deductions related to the DSIC investment, in particular the repair allowance, accelerated depreciation and bonus depreciation. R.R. at 245a; OCA Statement No. 1 at 9; OCA Brief, at 32.

Therefore, OCA argues that by not adjusting the pre-tax return rate to reflect a representative level of the tax deductions associated with the DSIC investment, Columbia's DSIC will always be calculated as if Columbia paid state income taxes at the full statutory rate even if it does not pay state income taxes at that level. Consequently, OCA asserts that this allowance violates the express language of Sections 1351 and 1353 of the Code, 66 Pa. C.S. §§1351, 1353, which limits DSIC recovery to costs the utility actually incurred.

OCA asserts that the Commission could find rates "just and reasonable" only if those rates were based upon actual taxes paid. Barasch v. Pa. Public Utility Commission (Penn Power), 491 A.2d 94 (Pa. 1985). In Penn Power, the Pennsylvania Supreme Court recognized that federal "normalization" rules prohibited the immediate flow through of certain federal tax benefits to ratepayers through a federal income tax expense reduction. However, the Pennsylvania Supreme Court in Penn Power required the utility to flow through state income tax benefits to ratepayers *on a current basis*. Penn Power, 491 A. 2d at 98, 101, 105-

15

07. "We believe that the Pennsylvania version of the 'actual taxes paid' doctrine, as developed in Pittsburgh I[19] and II[20] and the Commission in its earlier cases, accurately interprets the statutory requirement that rates be 'just and reasonable,' found in 66 Pa. C.S. § 1301." Penn Power, 491 A.2d at 107 (citations omitted in original); see also City of Erie v. Pa. Public Utility Commission (PEC), 383 A.2d 575 (Pa. Cmwlth. 1978).

OCA argues that, consistent with Penn Power, the Commission has recognized that the flow-through of the benefits associated with utilizing accelerated depreciation in the calculation of state income taxes is "mandated." OCA Brief at 36.

Consequently, OCA asserts that no rate is just and reasonable if it does not reflect the actual state income taxes paid by the utility; that Act 11 also imposed the requirement that fixed costs, which include pre-tax return, recovered through the DSIC must be actually *incurred* by the utility; that Columbia's state income tax expense for DSIC revenues will be reduced (or eliminated) by applicable tax deductions for accelerated depreciation and bonus depreciation related to the DSIC investment. Therefore, OCA argues, to correctly determine the DSIC calculation (to reflect actual taxes paid) and produce a rate that was just and reasonable, Columbia's pretax rate of return *must recognize and include* the state income tax deductions associated with the investments that were recovered through the DSIC.

---

[19] Pittsburgh, Appellant v. Pennsylvania Public Utility Commission, 128 A.2d 372, (Pa. Super. 1956) (Pittsburgh I ).

[20] Pittsburgh, Appellant v. Pennsylvania Public Utility Commission, 144 A.2d 648 (Pa. Super. 1958) (Pittsburgh II ).

Conversely, the Commission argues that the language of Act 11 applies the same procedures to ensure the reasonableness of the DSIC surcharge as it did to the Commission's water DSIC. The Commission notes that Section 1358 of the Code, 66 Pa. C.S. §1358, sets forth customer protections in the form of an earnings cap and reset of the DSIC surcharge at zero if the utility will earn a rate of return that would exceed the allowable rate of return used to calculate its fixed costs under the DSIC. The earnings cap was the method the General Assembly established to ensure that a utility did not earn more than its authorized return. 66 Pa. C.S. §1358(b)(3). Thus, the Commission asserts that the DSIC rate, as applied in its entirety, contains a "fail safe" provision, the earnings cap, to ensure that the rate was just and reasonable. Commission Brief, at 42.

So, the purpose of these customer protections is recognition that by creating a simplified framework, if it can be called that, for a DSIC calculation that forgoes the application of certain ratemaking principles that were appropriate for the in-depth investigation and review of base rates, certain protections for the DSIC ratepayers were necessary.[21] Had the General Assembly wanted to prohibit this practice for DSIC mechanisms or even proscribe and curtail the Commission's discretion to allow utilities to continue to utilize this practice, the General Assembly could have explicitly incorporated such a prohibition or placed a limit on the Commission's discretion at the time it enacted Act 11. However, the

---

[21] Water utilities have performed a "gross-up" for state income tax using the full statutory tax rate as part of the calculation of their DSIC rates for the past 18 years. The intent of the General Assembly was to model the Act 11 DSIC surcharge mechanism for all public utilities upon the 1997 water DSIC mechanism, which allowed water utilities to "gross up" for state income taxes in their DSIC calculation.

17

General Assembly declined to take such action when the statute was drafted or enacted.

As accurately and succinctly stated in Duquesne Light Company, the United States Supreme Court specifically acknowledged that a balancing of base rate adjustment allowances and disallowances was the very reason adjudicative bodies should not focus on individual components of the rate in determining whether rates were just and reasonable. Duquesne Light Company, 488 U.S. at 314.

Further, this Court must pay careful attention to the fact that every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa. C.S. §1921(a). It is presumed that the General Assembly intended the entire (Act 11) statute to be effective and certain. 1 Pa. C.S. §1922(2).

In the current conflict, this Court will not substitute its judgment for that of the Commission. City of Lancaster (Water) v. Pa. Public Utility Commission, 769 A.2d 567 (Pa. Cmwlth. 2001) (citations omitted). Consequently, the OCA's concern that Columbia will be able to overstate its investment balance and earn a return on an overstated investment balance has been addressed.

Accordingly, with the imposition of an earnings rate cap, as a whole, the overall effect of the calculated DSIC rate was just and reasonable. The decision of the Commission is affirmed.

_____
BERNARD L. McGINLEY, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanya J. McCloskey,                      :
Acting Consumer Advocate,                :
                        Petitioner          :
                                           :
          v.                            :
                                           :
Pennsylvania Public Utility              :
Commission,                              :   No. 1012 C.D. 2014
                        Respondent          :

# **O R D E R**

AND NOW, this 3rd day of November, 2015, the May 22, 2014 order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge