# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania-American Water Company, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| | : | No. 355 C.D. 2024 |
| v. | : | |
| | : | |
| Pennsylvania Public Utility Commission, | : | |
| Respondent | : | |
| | : | |
| Borough of Brentwood, | : | |
| Petitioner | : | |
| | : | No. 356 C.D. 2024 |
| v. | : | |
| | : | Argued: December 10, 2025 |
| Public Utility Commission, | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                      **FILED:  May 28, 2026**

In these consolidated appeals, the Borough of Brentwood and Pennsylvania-American Water Company (individually Borough and PAWC, and collectively Petitioners) each petition for review of the Pennsylvania Public Utility

Commission's (Commission) opinion and order (Opinion), issued on March 4, 2024. Through that Opinion, the Commission denied PAWC's request that it approve PAWC's proposed acquisition of the Borough's municipal wastewater collection system and grant PAWC a related certificate of public convenience (CPC).[1] Upon review, we are constrained to vacate the Commission's Opinion and remand this matter to the Commission for further proceedings.

## I. BACKGROUND[2]

The Borough, which is located in Allegheny County, owns and operates a public wastewater collection system that serviced approximately 4000 customers as of February 2023. A large proportion of this system's infrastructure is over 100 years old. Borough customers currently receive two bills: one from PAWC for clean incoming water;[3] and another from the Borough, which covers charges for wastewater collection and refuse disposal, as well as charges from the broader Allegheny County Sanitary Authority (ALCOSAN) for wastewater service.[4]

In September 2019, the Borough began the process of assessing whether it should either retain ownership of its wastewater collection system or

---

[1] PAWC is a public utility whose provision of water-related services is regulated by the Commission. *See generally Phila. Suburban Water Co. v. Pa. Pub. Util. Comm'n*, 808 A.2d 1044 (Pa. Cmwlth. 2002).

[2] We draw the substance of this section from the Commission's Opinion, as well as the Recommended Decision that was issued by a Commission administrative law judge (ALJ). *See generally* Recommended Decision, 1/17/24; Op., 3/4/2024.

[3] PAWC provides such service within the Borough separately from the Borough's municipal wastewater collection system.

[4] The Borough is a member of ALCOSAN, which provides wastewater conveyance and treatment services for the Borough's system, as well as for 82 other municipal systems in the area. ALCOSAN, the Borough, and the City of Pittsburgh (City) are all signatories to the Pittsburgh Zone Project Agreement of December 1, 1949, which allows ALCOSAN and the City to use the Borough's (and other municipalities') systems to facilitate the flow of wastewater to ALCOSAN's treatment plants without the need for those municipalities' express advance knowledge or consent.

endeavor to sell the system to another entity. The Borough ultimately concluded that the latter option was the more prudent one and issued a request for bids regarding the system's assets on September 25, 2020, to which PAWC responded on October 28, 2020, by submitting an acquisition proposal. Borough Council then approved the system's sale to PAWC on December 7, 2020, whereupon the Borough and PAWC entered into a purchase agreement for the Borough's system on December 22, 2020.

PAWC then filed an application with the Commission on October 31, 2023, pursuant to Section 1329 of the Public Utility Code (Code),[5] through which PAWC sought approval of its acquisition of the Borough's system and agreements related thereto, as well as the granting of a CPC regarding the provision of wastewater service within the Borough (Application).[6] A Commission ALJ then

---

[5] 66 Pa.C.S. § 1329.

[6] As our Supreme Court has aptly explained:

> Section 1329 of the Code created a process where, upon agreement of the acquiring and selling utilities engaged in a transaction for the purchase of the selling utility, the parties can engage in a procedure to determine the fair market value . . . of the selling utility. 66 Pa.C.S. § 1329(a). If the parties opt for this procedure, the ratemaking base rate of the selling utility "shall be the lesser of the purchase price negotiated by the acquiring public utility or entity and selling utility or the fair market value of the selling utility." *Id.* § 1329(c)(2). The selling utility's ratemaking rate base shall then be incorporated into the rate base of (1) the acquiring public utility during its next base rate case or (2) the entity in its initial tariff filing. *Id.* § 1329(c)(1)(i), (ii). Unlike Section 1327 [of the Code], Section 1329 does not limit the availability of the fair market valuation method to small, nonviable selling utilities that are not providing adequate service. *See id.* § 1329(g) (definitions of acquiring and selling utilities).
>
> When the parties proceed with Section 1329's fair market valuation process, the acquiring utility or entity must obtain a CPC from the

**(Footnote continued on next page…)**

3

held multiple public hearings and considered evidence and testimony submitted by PAWC, as well as by a multitude of interested parties, including ALCOSAN, the Borough, the Commission's Bureau of Investigation and Enforcement, the Office of Consumer Advocate (OCA), and the Office of Small Business Advocate (OSBA). Thereafter, on January 17, 2024, the ALJ issued a recommended decision, in which she advised the Commission to deny PAWC's Application in full. This recommendation was based upon the ALJ's determination that PAWC had failed to

---

Commission in accordance with Section 1102 of the Code. *See id.* § 1329(d)(1), (e). Pursuant to Section 1102, a CPC is required before a public utility may (1) provide services in a different territory than it is currently providing those services or (2) acquire from, *inter alia*, a municipal corporation title to property used to provide public services. *See id.* § 1102(a)(1), (3). Hence, an acquiring utility is required to obtain a new CPC prior to purchasing the property of a selling utility or providing services to that selling utility's customers, even when the acquiring utility already holds a CPC to provide those services in a different territory.

The procedure to obtain a CPC is set forth in Section 1103 of the Code, *id.* § 1103. Pursuant to Section 1103, in order to obtain a CPC, a public utility must file an application with the Commission. The application shall be granted "only if the [C]ommission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." *Id.* § 1103(a). Moreover, to obtain the CPC, an applicant has the burden, by a preponderance of evidence, to establish that it is technically, legally, and financially fit to provide the proposed service. *McCloskey v. Pa. Pub. Util. Comm'n*, 195 A.3d 1055, 1058 (Pa. Cmwlth. 2018) (citing *Seaboard Tank Lines, Inc. v. Pa. Pub. Util. Comm'n*, 502 A.2d 762, 763 n.1 (Pa. Cmwlth. 1985)). A certified public utility enjoys a presumption that it is fit. *Id.* Furthermore, in granting a CPC, the Commission "may impose such conditions as it may deem to be just and reasonable." 66 Pa.C.S. § 1103(a).

*Lawrence v. Pa. Pub. Util. Comm'n*, 348 A.3d 108, 113-14 (Pa. 2025) (cleaned up).

establish by a preponderance of the evidence that its acquisition of the Borough's system would substantially benefit the general public.

The Borough and PAWC then filed exceptions with the Commission regarding the proposed decision. The Commission subsequently issued its Opinion on March 4, 2024, through which it denied or deemed moot all of the exceptions and adopted the ALJ's recommended decision in full; in doing so, the Commission agreed with the ALJ that PAWC's proposed purchase of the system would not provide a substantial affirmative public benefit. These appeals to our Court then followed shortly thereafter.

## II. DISCUSSION[7]

PAWC contests the Opinion on several grounds. First, PAWC states that the Commission improperly evaluated the Application's merits using the standards for reasonableness it had set forth in a tentative supplemental

---

[7] This Court reviews a Commission order

> to determine whether the Commission's findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Popowsky v. Pa. Pub. Util. Comm'n*, 910 A.2d 38 (Pa. 2006). The standard of review to be applied when reviewing a Commission decision is that the Court should not substitute its judgment for that of the Commission when substantial evidence supports the Commission's decision on a matter within the Commission's expertise. *City of Lancaster (Water) v. Pa. Pub. Util. Comm'n*, 769 A.2d 567 (Pa. Cmwlth. 2001) (citing *Popowsky v. Pa. Pub. Util. Comm'n*, 706 A.2d 1197, 1201 (Pa. 1997)). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Borough of E. McKeesport v. Special/Temporary Civ. Serv. Comm'n*, 942 A.2d 274, 281 (Pa. Cmwlth. 2008).

*McCloskey v. Pa. Pub. Util. Comm'n*, 127 A.3d 860, 866 n.16 (Pa. Cmwlth. 2015) (cleaned up).

5

implementation order. PAWC's Br. at 14-19. Second, PAWC claims that the Commission abused its discretion and committed errors of law by determining that the proposed acquisition of the Borough's system would not provide a substantial affirmative public benefit. *Id.* at 19-57. Finally, PAWC contends that, in light of that purportedly incorrect public benefit determination, the Commission erred by concluding that all remaining issues regarding the Application had been rendered moot. *Id.* at 57-58. Furthermore, PAWC requests that this Court address those allegedly non-moot issues on their merits, rather than remanding this matter to the Commission for additional consideration.[8] *Id.* at 58-59.[9]

---

[8] The allegedly non-moot issues identified by PAWC are as follows: whether (a) the Application should be denied because some of the system's assets are not used and useful, or because PAWC will provide free service to other municipal systems that are upstream from the Borough's system; (b) an approval condition regarding a long-term infrastructure improvement plan should be adopted; (c) ratemaking decisions regarding transaction and closing costs should be made at this juncture; (d) a proposed rate freeze is to be considered a rate stabilization plan pursuant to Section 1329 of the Code; (e) contractually time-limited rate freeze provisions should be prohibited; (f) PAWC provided legally adequate notice to the Borough's customers; (g) PAWC should be required to provide notice to customers in future Section 1329 proceedings regarding a range of rate impacts that would potentially result from approval of an application of this nature; (g) PAWC should be required to treat ALCOSAN's charges and discounts as its own operational and maintenance expenses; (h) six contractual agreements that are necessary for PAWC to provide service to the system's customers should be approved; (i) PAWC should be required to provide a cost of service study excluding certain system assets in every future rate case; (j) PAWC should be required to hire a local agent to accept customer payments in the Borough; and (k) completing the system's sale should be conditioned upon adequate steps being taken to identify and secure all necessary easements and property rights. PAWC's Br. at 59-83.

[9] PAWC puts forth two additional arguments in its reply brief. First, PAWC asserts that the Commission contradicted itself in the Opinion by both deeming moot issues relating to non-customers' use of the Borough's wastewater collection system and then addressing those issues on their merits. Second, PAWC relatedly maintains that this Court cannot conduct proper appellate review because the Opinion does not clearly articulate how the Commission elected to dispose of those issues or how those dispositions affected the Commission's broader determination that PAWC's proposed acquisition of the Borough's wastewater collection system will not provide a substantial affirmative public benefit. PAWC's Reply Br. at 6-8.

As for the Borough, it adopts PAWC's arguments by reference, *see* Borough's Br. at 27, and challenges the Commission's Opinion on two additional bases. First, the Borough asserts that Section 1329 of the Code mandates that the Commission must approve an application of this nature if the underlying system sale is "proper," even if the sale is not strictly "necessary" and will result in rate increases being imposed upon the system's customers. Borough's Br. at 30-42. Second, the Borough maintains that the record is devoid of substantial evidence that supports the Commission's findings that the Borough has been providing system customers with adequate service and is itself capable of implementing the system upgrades and operational improvements proposed by PAWC. *Id.* at 43-48.

We need only address PAWC's second argument at this juncture, due to our Supreme Court's recent decision in *Lawrence v. Pennsylvania Public Utility Commission*, 348 A.3d 108 (Pa. 2025),[10] through which the higher court reversed our disposition of *Cicero v. Pennsylvania Public Utility Commission*, 300 A.3d 116 (Pa. Cmwlth. 2023).[11] In *Cicero*, Aqua Pennsylvania Wastewater, Inc. (Aqua) filed a Section 1329 application, through which it sought the Commission's approval of

---

[10] On February 9, 2026, PAWC filed an unopposed application for relief (Application), through which it requested leave to file a supplemental brief that addressed the effect of *Lawrence* upon the matter *sub judice*. We granted the Application on February 13, 2026, and gave this matter's parties 30 days to file such briefs at their discretion. On March 16, 2026, the Borough, the Commission, the OCA, and PAWC each elected to file such supplemental briefs.

[11] *Cicero* was retitled as *Lawrence* after the former decision was appealed to the Supreme Court, due to the fact that Darryl Lawrence had replaced Patrick Cicero as Pennsylvania's Consumer Advocate. *See AG Sunday Nominates Darryl Lawrence to Permanent Post as Pennsylvania Consumer Advocate*, PA. OFF. OF CONSUMER ADVOCATE (March 18, 2025), https://www.oca.pa.gov/ag-sunday-nominates-darryl-lawrence-to-permanent-post-as-pennsylvania-consumer-advocate; *Darryl Lawrence Confirmed by Pa. Senate as Pennsylvania's Consumer Advocate*, PA. OFF. OF CONSUMER ADVOCATE (June 4, 2025), https://www.oca.pa.gov/darryl-lawrence-confirmed-by-pa-senate-as-pennsylvanias-consumer-advocate.

its plan to purchase East Whiteland Township's (Township) municipal wastewater system. 300 A.3d at 1110-15. The Commission granted Aqua's application on the basis that Aqua had established that the prospective affirmative public benefits of the transaction outweighed its potential harms. *Id.* at 1115. The OCA then filed a petition for review in our Court, which we ultimately resolved by reversing the Commission's decision. We justified this reversal by explaining that the Commission had made two critical errors when considering the relative benefits and harms of the proposed acquisition. First, we ruled that the Commission had improperly based its approval upon "Aqua's size and associated technical, managerial, and financial fitness," rather than benefits that would accrue due to "Aqua's acquisition of the [Township's wastewater system] specifically." *Id.* at 1118. On this point, we specifically stated that the Commission should not have considered Aqua's offers of enhanced customer care and operational upgrades as public benefits in this context, because the Township was either already offering service at the same level proposed by Aqua or was equally capable of doing so. *Id.* at 1118-19. Second, we held that the Commission had incorrectly determined that Aqua's "aspirational statements" about the affirmative public benefits that would accrue as a result of the acquisition "outweigh[ed] the *known harm* of increased rates to the [wastewater system's] customers[.]" *Id.* at 1120 (emphasis added).

The Commission, the Township, and Aqua each filed separate petitions for allowance of appeal with our Supreme Court, which granted those petitions and subsequently overturned *Cicero* via *Lawrence*. The *Lawrence* Court explained that this was necessary because of flaws present in our interpretation and application of the affirmative public benefits test. First, though the Court agreed that this test is not satisfied "merely because the acquiring utility is legally, technically, and

financially fit to provide the proposed services," it held that we had erred by failing to recognize that the Commission may nevertheless "consider benefits deriving from that size and fitness in its affirmative benefits analysis." *Lawrence*, 348 A.3d at 129. Second, the Court concluded that we had improperly reweighed the record evidence through our analysis of Aqua's and the Township's comparative service capabilities, in contravention of our limited standard and scope of review. *Id.* at 130-31. Finally, the Court ruled that we had inaccurately characterized rate increases as a "known harm," because "a transaction does not only satisfy the affirmative public benefits test if it results in lower rates for consumers." *Id.* at 131. Instead, we should have acknowledged that "a transaction's impact on rates is just one of many factors the Commission is to consider in determining whether a transaction [*in toto*] will result in affirmative public benefits." *Id.*; *see also id.* (quoting *Popowsky v. Pa. Pub. Util. Comm'n*, 937 A.2d 1040, 1056 (Pa. 2007)) (noting that "[the] potential rate impact of a transaction is only 'a component of a net benefits assessment'"). Accordingly, the Supreme Court reversed our *Cicero* decision and remanded the matter to our Court for further proceedings. *Id.* at 133.

*Lawrence* is of critical salience here, not only because it addressed a similar Section 1329 matter, but also because the Commission relied upon *Cicero* when denying PAWC's application. In doing so, the Commission predicated its disposition of the application's merits to a not insignificant degree upon our since-overruled articulation of which elements may constitute substantial affirmative public benefits in a Section 1329 transaction, as well as our inaccurate assessment of which elements may qualify as a known harm. *See* Op. at 14, 59-61, 67-80. The

Commission's denial of PAWC's Application was therefore in error, because it did not apply the correct legal standard during its evaluation of the Application.[12]

### III. CONCLUSION

In accordance with the foregoing analysis, we are constrained to vacate the Commission's Opinion and to remand this matter for further proceedings, through which the Commission must issue a new opinion and order that comports with *Lawrence* and the analytical guidance provided therein. On remand, the Commission shall give the parties an opportunity to file supplemental briefs. In addition, the Commission may allow the parties to present additional evidence, in the event it concludes that Petitioners' exceptions to the ALJ's Recommended Decision cannot be properly addressed through the record as currently constituted.[13]

---

**LORI A. DUMAS, Judge**

---

[12] An appellate decision that, like *Lawrence*, neither "involve[s] a new principle of law which overrules clear past precedent, nor . . . decide[s] an issue of first impression whose resolution was not clearly foreshadowed" should be applied retroactively to pending matters. *Batoff v. Bureau of Pro. & Occupational Affs., State Bd. of Psych.*, 631 A.2d 781, 784 (Pa. Cmwlth. 1993); *accord Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1098-1102 (Pa. 1991); *August v. Stasak*, 424 A.2d 1328, 1330-32 (Pa. 1981).

[13] Given our disposition of this matter, we decline to address the remainder of Petitioners' appellate issues.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania-American Water Company, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | No. 355 C.D. 2024 |
| v. | : | |
| | : | |
| Pennsylvania Public Utility Commission, | : | |
| Respondent | : | |
| | : | |
| Borough of Brentwood, | : | |
| Petitioner | : | |
| | : | No. 356 C.D. 2024 |
| v. | : | |
| | : | |
| Public Utility Commission, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 28th day of May, 2026, it is hereby ORDERED:

1. Pennsylvania Public Utility Commission's (Commission) opinion and order, issued on March 4, 2024, is VACATED;

2. This matter is REMANDED to the Commission, with instructions that it issue a new opinion and order after remand that comport with the Pennsylvania Supreme Court's decision in *Lawrence v. Pennsylvania Public Utility Commission*, 348 A.3d 108 (Pa. 2025), and the analytical guidance provided therein;

3. The Commission shall give the parties an opportunity to file supplemental briefs.  In addition, the Commission may allow the parties to present additional evidence, in the event it concludes that Pennsylvania-American Water

Company's and Borough of Brentwood's respective exceptions to the administrative law judge's Recommended Decision cannot be properly addressed through the record as currently constituted.

Jurisdiction relinquished.

_____
**LORI A. DUMAS, Judge**