**CITY OF LANCASTER (WATER),**
**Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY**
**COMMISSION, Respondent.**

**City of Lancaster (Water), Petitioner,**

v.

**Pennsylvania Public Utility**
**Commission, Respondent.**

**City of Lancaster (Water), Petitioner,**

v.

**Pennsylvania Public Utility**
**Commission, Respondent.**

**Townships of Manheim, Lancaster, East Hempfield, West Lampeter, East Lampeter, Manor and West Hempfield and the Leola Sewer Authority, Petitioners,**

v.

**Pennsylvania Public Utility**
**Commission, Respondent.**

**Townships of Manheim, Lancaster, East Hempfield, West Lampeter, East Lampeter, Manor and West Hempfield and the Leola Sewer Authority, Petitioners,**

v.

**Pennsylvania Public Utility Commission, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 2000.
Decided March 20, 2001.

Kenneth Zielonis, Harrisburg, for petitioner, City of Lancaster (Water).

Charles B. Zwally, Harrisburg, for petitioners, Twp. of Manheim, Lancaster, et al.

John A. Levin, Harriburg, for respondent.

James A. Mullins, Harrisburg, for intervenor, Office of Consumer Advocate.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, FRIEDMAN, Judge, KELLEY, Judge, LEADBETTER, Judge.

COLINS, Judge.

The City of Lancaster (City) petitions for review of the orders respectively entered by the Public Utility Commission (PUC) on September 22, 1999, October 22, 1999, and November 4, 1999, regarding the City's proposed jurisdictional rate increase of $999,937, representing an 18.8% increase over existing rates for water service provided to customers located outside the City's municipal boundaries, as presented in the City's Supplement No. 28 to Tariff Water–Pa. PUC No. 6. Consolidated with the foregoing matter are cross-petitions for review filed by the municipalities of Manheim, Lancaster, East Hempfield, West Lampeter, East Lampeter, Manor, and West Hempfield, and the Leola Sewer Authority (collectively Townships), opposing the PUC's orders which, the Townships aver, allow the City an excessive rate of return. Also before this Court for disposition are the PUC's motion to quash the City's petition for review pursuant to Pa. R.A.P. 1701(b), and the City's answer thereto.

The background of the City's petition for review follows. On December 23, 1998, the City filed a proposed rate increase by way of Supplement No. 28 to Tariff Water—Pa. P.U.C. No. 6., which proposed to raise the rates of customers outside the City's limits by $999,937 or 18.8% over existing rates, while decreasing the rates of customers within the City's limits by $148,022 or 3.1% below existing rates. On February 11, 1999, the PUC issued an order suspending the implementation of Supplement No. 28 until September 23, 1999, while it investigated said Supplement. Formal complaints against the City's rate increase proposal were filed respectively by the Office of Consumer Advocate (OCA), the City of Lancaster Users Group, and the Townships.

On May 17, 1999, a hearing was held before an administrative law judge (ALJ), and the evidentiary record was closed on May 26, 1999. On July 20, 1999, the ALJ's recommended decision was issued, to which the parties filed exceptions and reply exceptions. Thereafter, on September 22, 1999, the PUC issued an order granting in part and denying in part the City's exceptions, denying the exceptions of the OCA and the Townships, and modifying the ALJ's decision by providing: (1) that the City shall not implement the rates contained in its Supplement No. 28; (2) that the City may file tariffs or tariff supplements containing rates, rules, and regulations directed to its Water Fund customers situate outside its municipal borders, with the intention of producing additional annual operating revenues not to exceed $610,350; (3) that the City shall allocate the $610,350 increase in annual operating revenues in percentages as close as possible to those set forth in City Exhibit 1, Volume 1, Schedule K 2, Pro Forma Proposed Percentage as follows: residential customers, 52.55%, commercial customers, 33.57%, and industrial customers, 11.12%; and that rates for bulk water service and for fire protection service shall be those stated in City Exhibit 1. The PUC's September 22, 1999 order further provided

that the formal complaints filed in this matter be partially sustained and partially denied to the extent consistent with this order and that the parties' joint petition for partial settlement of the case be approved. Although the September 22, 1999 order attempted to resolve all of the parties' respective exceptions, on September 27, 1999, the City filed a petition for a rehearing. On October 22, 1999, the PUC entered an order granting reconsideration pending review on the merits, but on November 4, 1999, the PUC denied the City a rehearing.

The City filed appeals from the PUC's September 22, October 22, and November 4, 1999 orders. On December 28, 1999, the foregoing respective appeals were consolidated and, along with two cross-appeals filed by the Townships, are now before this Court.[1]

■ Procedurally, we first address the PUC's motion to quash the City's petition pursuant to Pa. R.A.P. 1701(b) which motion alleges that: (1) Pa. R.A.P 1512(a) provides that a petition for allowance of appeal of a quasijudicial order shall be filed within 30 days; and (2) Pa. R.A.P. 1701(b) provides that an agency entering such an order retains jurisdiction for 30 days after entry to allow for granting reconsideration if requested. The PUC's motion contends that Pa. R.A.P. 1701(b)(3) provides that an order granting reconsideration, as in the present matter, "renders inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order."

Applying the foregoing to the present matter, the PUC avers that October 22, 1999, the date on which the City filed its petition for review with this Court, was the same date on which the PUC granted a petition filed by the City on September 27, 1999, for reconsideration of the disputed September 22, 1999 PUC order. It is the PUC's position that because it granted the City reconsideration, the latter's petition for review should be quashed. In rebuttal, the City argues that, in *Westinghouse Electric Corp. v. Pennsylvania Public Utility Commission*, 407 A.2d 65 (Pa. Cmwlth.1979), this Court held that Pa. R.A.P. 1701(b)(3) was not intended to render inoperative any issues on appeal that were not the subject of an application for reconsideration. Accordingly, the City argues that one of the critical questions raised in its petition for review, that of determining the appropriate capital structure to be used for setting the City's water rates, is still a pending issue and that, therefore, the City's petition for review should not be quashed. Upon consideration, we concur with the City's argument and deny the PUC's motion to quash.

Turning now to the merits of the matter *sub judice*, the City's appeal challenges the PUC's orders on the grounds that the latter establish an overall rate of return for a municipal corporation (5.64%) in a manner different than that used for a non-municipal corporation, a practice that the City avers contravenes the Pennsylvania Public Utility Code (Code)[2] and judicial precedent. It is the City's position that both the Code and precedent require that the rate-setting process for a municipal

1. Our scope of review of an order of the Commission requires that we determine whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704. *Friends of the Atglen–Susquehanna*

*Trail, Inc. v. Pennsylvania Public Utility Commission*, 717 A.2d 581 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 559 Pa. 695, 739 A.2d 1059 (1999).

2. 66 Pa.C.S. §§ 101–3316.

public utility and a non-municipal utility be established using similar principles, and that the municipal public utility must be granted a rate of return equivalent to that granted comparable, non-municipal risk companies. The City also argues that the 5.64% overall rate of return authorized by the PUC's orders is lower than risk-free investment yields and therefore confiscatory, and that said orders improperly regulate the private investor's return by applying a theoretical tax expense (a tax factor) upon the common equity return. In this regard, the City contends that the PUC's analysis in arriving at its chosen rate of return was based upon misinformation, erroneous conclusions, and rejection of contrary PUC precedent on the rate-setting issue without any rational basis.

The PUC argues that the City may charge any rate it deems appropriate to its own city residents, but when the City services customers outside its corporate limits, it is subject to the Code, which requires that all rates charged by PUC regulated entities be "just and reasonable." [3] It is the PUC's position that its September 22, 1999 order was based upon substantial evidence of record and correctly set a fair return on the City's municipal debt and equity investment. The PUC also takes issue with the City's argument that it is entitled to receive a return on its "common equity" just as if it were a private corporation required to raise at-risk capital from private shareholders. In this regard, the PUC contends that the City, as a municipal corporation, can raise its capital requirements solely from inexpensive, tax-free municipal long-term debt, taxpayer revenue, and cash flow.

In *Popowsky v. Pennsylvania Public Utility*, 550 Pa. 449, 706 A.2d 1197 (1997), in which the Supreme Court granted allocatur to review, among other issues, whether substantial evidence supported a price stability mechanism adopted by the PUC, the Supreme Court unequivocally defined this Court's standard of review stating:

> The standard of review to be applied by the Commonwealth Court when reviewing the PUC is that the court should not substitute its judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the commission's expertise. The court itself has said:
>
>> Our duty is to determine only whether or not the PUC's findings are supported by substantial evidence; we may not substitute our judgment for that of the PUC, nor may we "indulge in the processes of weighing evidence and resolving conflicting testimony."
>
> The decision at issue, involving complex financial determinations and weighing and interpreting statistical and economic evidence, is within the PUC's area of expertise.
>
> .    .    .    .    .
>
> As long as there is a rational basis for the PUC's methodology [in establishing a rate structure], such decisions are left entirely up to the discretion of the PUC which, using its expertise, is the only one which can

3. Section 1301 of the Public Utility Code provides:

Every rate made, demanded, or received by any public utility, or by any two or more public utilities jointly, shall be just and reasonable, and in conformity with regulations or orders of the commission. Only public utility service being furnished or rendered by a municipal corporation, or by the operating agencies of any municipal corporation, beyond its corporate limits, shall be subject to regulation and control by the commission as to rates, with the same force, and in like manner, as if such service were rendered by a public utility.
66 Pa.C.S. § 1301.

properly determine which method is the most accurate given the particular circumstances of the case and economic climate.

It is well settled that the establishment of a rate structure ... is an administrative function peculiarly within the expertise of the PUC.

550 Pa. at 457–58, 706 A.2d at 1201 (citations omitted). The Supreme Court further took notice of "the deference due the PUC in a function peculiarly within its area of expertise." 550 Pa. at 460, 706 A.2d at 1202.

Applying the foregoing rationale to the matter before us and upon reviewing the record, we find that substantial evidence supports the PUC's denial of the City's petition for rehearing and the PUC's deeming said petition as one seeking reconsideration, which the PUC granted pending review of the merits. Additionally, we find that substantial evidence supports the PUC's rate-making determinations concerning the City as set forth in the PUC September 22, 1999 order.

■■■ First, we concur with the PUC's denial of the City's petition for rehearing, on the basis that accepting the City's general averments of changed financial information after the close of the record as the reason for granting a rehearing would, in effect, prevent the record in any litigated rate case from ever closing, and would result in countless requests to reopen records and grant rehearings. On this issue, the PUC refers to this Court's decision in *AT & T Communications of Pennsylvania v. Pennsylvania Public Utility Commission*, 130 Pa.Cmwlth. 595, 568 A.2d 1362 (1990), wherein, as in the present case, the PUC was presented with a petition for rehearing, in response to which the PUC instead granted reconsideration. When AT & T argued on appeal that the PUC had erred in granting the petitioner recon-

sideration rather than a rehearing without petitioner's having alleged any new evidence for the PUC to consider, the Court observed that "[w]hile *rehearing* petitions must allege newly discovered evidence, it is clear that under Section 703(g) of the Code, 66 Pa.C.S. § 703(g),[4] there is no such requirement for petitions to amend or rescind. It was within the PUC's discretion to characterize the letter as it did." 568 A.2d at 1364–65. Footnote 4 stated,

Section 703(g) states:

**Rescission and amendment of orders.**—The commission may, at any time, after notice and after opportunity to be heard as provided in this chapter, rescind or amend any order made by it. Any order rescinding or amending a prior order shall, when served upon the person, corporation, or municipal corporation affected, and after notice thereof is given to the other parties to the proceedings, have the same effect as is herein provided for original orders.

568 A.2d at 1365 n. 4. Similarly, in the matter before us, it was within the PUC's discretion to treat the City's petition for rehearing as a petition for reconsideration.

■■■ As to the City's allegations that the PUC erred in determining the City's rate of return, we find the PUC's rationale for its decision to be sound. With respect to the City's challenge that the 9% common equity return and the adjusted 6.48% common equity return set by the PUC are significantly lower than the common equity factor of the Distribution System Improvement Charge (DSIC), the PUC points out that the DSIC rate is not a market-based rate of return, but rather a common equity threshold rate below which Pennsylvania's water utilities are automatically eligible to file a DSIC tariff. In this regard, the PUC notes that the City is not prevented from filing a DSIC tariff pursuant to Sec-

tion 1307(g) of the Public Utility Code, 66 Pa.C.S. § 1307(g).[4]

We further concur with the PUC's well-reasoned argument that municipal water utilities and private investor-owned utilities substantially differ in that the former do not have "equity" investors that require a "return." Equity for a municipal utility is produced by tax revenues rather than from equity investors, and careful application of the cost of service/rate of return allowance is how municipal utilities can recover cost of service. The City, moreover, as a municipally run public utility, has the capability of issuing new municipal bonds based upon its reserve funds and based upon municipal ordinances providing for such issuance. Additionally, we agree with the PUC's rejection of the City's reliance upon fluctuating financial data, such as the yield on thirty (30) year bonds that fluctuated sixty (60) basis points from March 26, 1999 to September 24, 1999, and we accept the PUC's position that the record of any proceeding must conclude on a finite date irrespective of daily bond market fluctuations. Finally, we defer to the PUC's adoption of the 28% tax factor adjustment based upon the fact that the largest group of investors are in the 28% bracket and that the rate of return of common equity should be adjusted to reflect the difference in long-term bond costs for taxable bonds versus municipal or tax-free bonds.

■ In reviewing the present matter within the context of prior, analogous PUC rate determination questions that have come before this Court on appeal, we note that the Court has consistently recognized and adhered to the principle that

> the establishment of a rate structure, and consequently the establishment of the cost of equity to be included in the rate base of that structure is an administrative function peculiarly within the expertise of the PUC.

> .    .    .    .    .

> The PUC has the discretion to make the decision of which method or methods it will rely on to calculate a reliable cost of equity. The PUC has the expertise to make an informed judgment regarding which method is proper for the circumstances of the particular case, be it the economic conditions in general or the peculiar nature of the particular utility.

*West Penn Power Company v. Pennsylvania Public Utility Commission,* 147 Pa. Cmwlth. 6, 607 A.2d 1132, 1135, 1136 (1992), *petition for allowance of appeal denied,* 539 Pa. 661, 651 A.2d 547 (1993) (citations omitted).

Accordingly, we deny the PUC's motion to quash the City's petition, we deny the City's petition for review and the cross-petitions filed by the Townships, and we affirm the decision of the PUC.

### ORDER

AND NOW, this 20th day of March 2001 in the above-captioned matter, the motion of the Pennsylvania Public Utility Commission to quash the petition for review filed by the City of Lancaster is denied, the petition for review filed by the City of

---

4. 66 Pa.C.S. § 1307(g) provides, in pertinent part, as follows:

    (g) **Recovery of costs related to distribution system improvement projects designed to enhance water quality, fire protection reliability and long-term system viability.**—Water utilities may file tariffs establishing a sliding scale of rates or other method for the automatic adjustment of the rates of the water utility as shall provide for recovery of the fixed costs (depreciation and pretax return) of certain distribution system improvement projects, as approved by the commission, that are completed and placed in service between base rate proceedings.

Lancaster and the cross-petitions filed by the Townships are denied, and the September 22, 1999, October 22, 1999 and November 4, 1999 orders of the Pennsylvania Public Utility Commission are affirmed.

DOYLE, President Judge, Concurring.

While I agree with the Majority's decision to deny the Public Utility Commission's motion to quash, I would not deny the motion based on the reasoning in *Westinghouse Electric Corp. v. Pennsylvania Public Utility Commission*, 407 A.2d 65 (Pa.Cmwlth.1979).

In *Westinghouse*, we stated that Pa. R.A.P. 1701(b)(3) was not intended to render inoperative an issue on appeal that was not the subject of an application for reconsideration. The *Westinghouse* holding allows the issues in a case to be split between the court or the tribunal that granted reconsideration and the court hearing the appeal. In the instant case, applying *Westinghouse*, the Majority concludes that, despite the PUC order granting reconsideration, a pending issue remained and, accordingly, the appeal should not be quashed.

The problem with this analysis is that it conflicts with Pa. R.A.P. 341, as amended in 1992, which states that a final order is, among other things, an order that disposes of all claims and all parties. When reconsideration is granted to some, but not all, issues in a case, the order being appealed must be deemed interlocutory, since it no longer disposes of all claims. Plainly, *Westinghouse* sets forth a rule that is contrary to the letter and the spirit of the final order principles in Pa. R.A.P. 341, and, for that reason, I would hold that *Westinghouse* has been overruled by the 1992 amendments to Pa. R.A.P. 341.

Nevertheless, I believe that the PUC's October 22, 1999 reconsideration order did not render the instant appeal inoperative under Pa. R.A.P. 1701, because the October 22nd order did not expressly grant reconsideration within the appeal period. Under Pa. R.A.P. 1701(b)(3), the PUC is required to expressly grant reconsideration within the time prescribed for filing the petition for review. *Pennsylvania Industrial Energy Coalition v. Pennsylvania Public Utility Commission*, 653 A.2d 1336 (Pa.Cmwlth.1995), *aff'd*, 543 Pa. 307, 670 A.2d 1152 (1996). The October 22nd order, however, states that reconsideration "is granted, *pending review of, and consideration on, the merits.*" (Emphasis added.) The PUC admits in its brief that this order was "interim in nature, pending final decision on the petition for reconsideration" (PUC's brief at 36), and the record shows that the final decision on the petition was entered on November 4, 1999, when the PUC denied reconsideration. Therefore, the motion to quash was properly denied.

Judge LEADBETTER joins.