IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Respond Power, LLC,             :

             Petitioner        :

                         :   No. 260 C.D. 2020

            v.              :

                         :   Argued:  December 7, 2020

Pennsylvania Public Utility    :

Commission,                 :

             Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED:  February 9, 2021

Respond Power, LLC (Respond Power) petitions for review of the June 13, 2019, and February 6, 2020 orders of the Pennsylvania Public Utility Commission (Commission) dismissing its formal complaints against the Electric Generation Supplier Coordination Tariffs (Supplier Tariffs) that were approved by the Commission and filed by two electric distribution companies, Pennsylvania Electric Company (Penelec) and West Penn Power Company (West Penn) (collectively, the Companies), on October 28, 2016, with an effective date of August 1, 2016.[2]  The

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] On April 2, 2020, the Companies filed a notice of intervention pursuant to Rule 1531 of the Pennsylvania Rules of Appellate Procedure.  Notices of intervention were also filed by the Penelec **(Footnote continued on next page…)**

Companies' Supplier Tariffs contain modifications to the Companies' Purchase of Receivables ("POR") Program to include the implementation of a "Clawback Charge."

Respond Power filed the underlying formal complaints pursuant to section 701 of the Public Utility Code (Code), 66 Pa.C.S. §701,[3] and 52 Pa. Code §5.21(a),[4] after it received invoices from the Companies totaling $484,797.69, representing a charge or fee assessed against Respond Power in connection with its uncollectible accounts receivable expenses (referred to by the Commission as a "Clawback Charge"). In this appeal, Respond Power argues that the Commission's orders dismissing its complaints unlawfully permit retroactive ratemaking, and violated its fundamental right to due process. For the reasons that follow, we affirm.

---

Industrial Customer Alliance, the West Penn Power Industrial Intervenors, Met-Ed Industrial Users Group, and the Office of Consumer Advocate (OCA).

[3] Section 701 of the Code states:
> The commission, or any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission. Any public utility, or other person, or corporation likewise may complain of any regulation or order of the commission, which the complainant is or has been required by the commission to observe or carry into effect. The Commonwealth through the Attorney General may be a complainant before the commission in any matter solely as an advocate for the Commonwealth as a consumer of public utility services. The commission may prescribe the form of complaints filed under this section.

66 Pa.C.S. §701.

[4] 52 Pa. Code §5.21(a) states: "A person complaining of an act done or omitted to be done by a person subject to the jurisdiction of the Commission, in violation, or claimed violation of a statute which the Commission has jurisdiction to administer, or of a regulation or order of the Commission, may file a formal complaint with the Commission."

**Factual and Procedural History**

**The Parties**

Respond Power is a licensed electric generation supplier ("EGS") under the Electricity Generation Customer Choice and Competition Act (Competition Act).[5] An EGS is defined in the Code as:

> A person or corporation . . . brokers and marketers, aggregators or any other entities, that sells to end-use customers electricity or related services utilizing the jurisdictional transmission or distribution facilities of an electric distribution company or that purchases, brokers, arranges or markets electricity or related services for sale to end-use customers utilizing the jurisdictional transmission and distribution facilities of an electric distribution company.

66 Pa.C.S. §2803 (Definitions).

As an EGS, Respond Power sells electric supply to residential and small retail customers in the service territories of the Companies. (Reproduced Record (R.R.) at 166a.)

The Companies are electric distribution companies (EDCs). Under Section 2803 of the Code, EDCs, such as the Companies, are "default service" providers for their distribution customers and, as such, are required to obtain electric generation on behalf of "retail electric customers who: (1) contract for electric power, including energy and capacity, and the chosen electric generation supplier does not supply the service; or (2) do not choose an alternative electric generation supplier." 66 Pa.C.S. §2803 (Definitions).

---

[5] 66 Pa.C.S. §§2801-2815.

3

**The Companies' Purchase of Receivables (POR) Program**

In 2007, in order to facilitate retail competition, the Commission encouraged EDCs to provide various services to EGSs. One such service is the EDCs' purchase of EGSs' accounts receivable, otherwise known as "Purchase of Receivables" or POR programs. *See* 52 Pa. Code §69.1814 (The public interest would be served by the consideration of an EGS receivables purchase program in each service territory.).

Generally, under POR programs, EDCs agree to pay the EGSs the face value of their account receivables without recourse to the EGSs regardless of what the Companies were actually able to collect from the end-use customer. (R.R. at 167a.) The specific terms and conditions of each EDC's POR program are usually established during default service plan proceedings, and then they are included in the EDC's Supplier Tariffs. (R.R. at 169a-70a, 174a-75a, 180a.)

**The Companies' Default Service Proceeding (DSP) III Petitions**

During the default service proceedings (DSP) for approval of their third respective default service programs, the Companies voluntarily proposed to establish POR programs for their EGSs. The Companies' POR programs offered EGSs the opportunity to have the Companies fully purchase their account receivables from customers "without recourse."[6] In other words, the POR programs relieved EGSs of the risk that their customers would not pay their bills for electric generation service. EGSs that chose to participate in the POR programs received 100 cents on the dollar for their accounts receivable, and the Companies had no claim against the EGSs if the EGSs' customers did not pay their bills. This program covered the period from June 1, 2015, through May 31, 2017. (R.R. at 170a-72a.) The Commission approved the

---

[6] "Without recourse" is a commercial term meaning that once a receivable is sold, the purchaser of the receivable has no recourse with the seller to collect on any amounts the purchaser is unable to successfully recover through customer collection efforts. (R.R. at 170a-72a.)

Companies' proposed "no recourse" POR programs and they were made part of the Companies' Supplier Tariffs.

### The Companies' Joint DSP IV Petition

After the "no recourse" POR programs were in effect for approximately six (Penelec) and four (West Penn) years, the Companies sought to impose an administrative charge or fee upon EGSs for participating in the POR programs, *i.e.*, the Clawback Charge. According to the Companies, the proposed change was necessary because they were incurring higher uncollectible expenses than expected, due to excessive EGS write-offs. (R.R. at 172a.)

On November 3, 2015, the Companies filed a joint petition requesting that the Commission approve each Company's proposed fourth default service program for the period June 1, 2017, through May 31, 2019 (DSP IV Petition), proposed rates for default generation service, continuation of its competition-enhancing customer-referral programs, and a revision to its POR programs to add the Clawback Charge provision. Specifically, and as initially proposed, a charge would be imposed if an EGS's average accounts receivable write-off percentage (write-offs for non-payment as a percentage of revenues) for the preceding annual period exceeded 150% of the average write-off percentage for all POR-participating EGSs. If that threshold was crossed, an EGS that wished to remain in the POR program would have to pay a fee equal to the difference between its actual write-offs and what its write-offs would have been at 150% of the average write-off percentage for all participating EGSs.

On November 3, 2015, the DSP IV Petition was served upon, *inter alia*, all EGSs licensed to sell electric generation in the service areas of the Companies. (R.R. at 249a.) Respond Power was included on the certificate of service. (R.R. at 249a.) In addition, the Commission caused a notice of the DSP IV proceedings to be

5

published in the November 14, 2015 edition of the *Pennsylvania Bulletin* explaining that any interested party could intervene in the proceeding initiated by the DSP IV Petition. *See* 45 Pa. B. 6654-6655 (2015). (R.R. at 250a.) The notice also stated that a prehearing conference was scheduled for December 1, 2015, before an Administrative Law Judge (ALJ). *Id.* In addition, the Commission issued a notice of such prehearing conference, and the ALJ issued his prehearing conference order, both of which were served on all the same parties that received the DSP IV Petition, including Respond Power. (R.R. at 249a-50a, 386a, 392a, 494a.)

Additionally, the second paragraph of the DSP IV Petition, which begins on page 2 and carries over to page 3, sets forth in 12 separately numbered items, each of the specific approvals that the Companies were requesting the Commission to grant, including approving proposed revisions to respective Supplier tariffs related to their POR programs. Furthermore, Statement 3 of the DSP IV Petition, in over eight pages in question-and-answer form, explained the terms of the proposed Clawback Charge provisions, why they were being proposed, how they would be calculated, and how the proceeds would be applied. Exhibits KLB-4 through KLB-7 to the DSP IV Petition consisted of proposed supplements to the Companies' Supplier Tariffs. These exhibits included the terms of the proposed Clawback Charge provisions.

Various parties intervened in the DSP IV proceeding, including the Retail Energy Supply Association (RESA)[7] and two EGSs that market generation services in the Companies' service areas. The parties to the Companies' DSP IV proceeding subsequently achieved a settlement of all issues related to the DSP IV Petition. Specifically, the write-off threshold was raised from 150% to 200% of the average write-off percentage of all EGSs. Second, another screening feature was added such

---

[7] RESA is a trade association of EGSs of which Respond Power, through its parent company, is a member.

that, even if an EGS crossed the 200% threshold, it would not incur a Clawback Charge unless, during the review period, the average price it charged for generation was more than 150% of the applicable Companies' average Price-to-Compare (PTC) for the same period. The Clawback Charge as adopted in the settlement was to be in effect for two annual periods, concluding on August 31, 2016, and 2017, and would expose EGSs to a Clawback Charge in 2016 and 2017. In its Final Order approving the DSP IV Petition, as modified by the settlement, the Commission found the settlement terms to be in the public interest, including implementation of a Clawback Charge on a pilot basis for two years (DSP IV Final Order). The Commission ordered the Companies to file tariff supplements to effectuate the terms of the settlement, and on October 28, 2016, the Companies filed their Supplier Tariffs containing the Clawback Charge, with an effective date of August 1, 2016. By Secretarial Letter dated November 10, 2016, the Commission approved the Supplier Tariffs, noting they were filed in compliance with the DSP IV settlement.

Pursuant to the settlement terms, the Companies conducted an analysis of the accounts receivable write-offs and prices charged to customers for all EGSs that participated in their POR programs during the 12-month period ending August 31, 2016. Based on those analyses, the Companies identified Respond Power and one other EGS as subject to the Clawback Charges.[8] On September 27, 2016, Penelec and West

---

[8] According to the Companies, Respond Power's write-off percentage was 14.79% and 14.42% for Penelec and West Penn, respectively, in 2016, and 8.87% and 9.51% for Penelec and West Penn, respectively, in 2017. (R.R. at 254a-55a, 267a-68a.) The Companies averred that these write-off percentages were three to seven times 200% of the average write-offs of over 65 other EGSs. *Id.* Further, the Companies indicated that in 2016, Respond Power had the highest write-off percentage of any EGS serving residential and small commercial customers in West Penn's service territory and the second highest in Penelec's territory. *Id.* The Companies further alleged that Respond Power charged some of the highest prices for generation in the market, which were, on average, more than 250% of the applicable PTC. *Id.*

7

Penn issued invoices to Respond Power via email for POR administrative charges, *i.e.*, the Clawback Charge, of $305,890.63 and $178,907.06, respectively. The invoices were based on written-off charges that the Companies had been unsuccessful in collecting from Respond Power's supply customers from September 1, 2015, through August 31, 2016. (R.R. at 197a-198a.) Referencing the DSP IV Final Order as providing additional information about the Clawback Charge, the emails indicated that failure to remit payment by the due date of October 27, 2016, would result in the Companies withholding POR payments. Respond Power refused to pay the invoices.

### Respond Power's Complaints

On November 17, 2016, Respond Power filed the complaints that are the subject of this appeal, challenging the validity of the Clawback Charge and seeking to nullify the Companies' Supplier Tariff provisions back to the date of the DSP IV Final Order. (R.R. at 1a-39a.) According to the complaints, the Clawback Charge constituted improper retroactive ratemaking because it was computed and based on billing determinants and conditions that were not resolved and/or established until after the period of time in which the conditions giving rise to the liability arose. The complaints also asserted that it was denied constitutional due process because it was denied notice and an opportunity to be heard. The complaints conceded that it was served with the proposed DSP IV Petition, but alleged that due to their nature, default service plans are usually "forward-looking"; the description of the filing as establishing the Companies' 2017-2019 Default Service Program and the fact that the Clawback Charge proposal was "buried" within the massive filing, "Respond Power was not placed on notice of the inclusion of a proposed retroactive modifications to the POR program. As a result, Respond Power did not intervene in the proceeding." In addition, the complaints alleged that Respond Power had not received a breakdown of the

8

charges from the Companies and, because it had not received this information, Respond Power was unable to verify the accuracy of the amounts requested by the Companies.

The Companies filed answers and new matter on December 8, 2016.[9] (R.R. at 40a-106a.) At the same time, the Companies filed motions for judgment on the pleadings. The motions contended that Respond Power's complaints were collateral attacks on the DSP IV Final Order barred by section 316 of the Code, which provides that "[w]henever the commission shall make any rule, regulation, finding, determination or order, the same shall be conclusive upon all parties affected thereby, unless set aside, annulled or modified on judicial review." 66 Pa.C.S. §316. The motions argued that the DSP IV Final Order precluded affected parties from challenging that order if those parties were provided due process prior to the entry of the order.[10]

The Companies pointed out that Respond Power was served with the DSP IV Petition but failed to participate in the proceedings or settlement negotiations. They noted that other EGSs intervened in the DSP IV proceedings and participated actively in the proceedings and settlement. The Companies further asserted that there was no basis for Respond Power's claim that the Clawback Charge provisions violated the prohibition against retroactive ratemaking, as the prohibition only applies to rates for utility service. They reasoned that Respond Power's participation in their POR

---

[9] The OCA filed a notice of intervention and public statements, alleging that the OCA was a signatory to the settlement that resulted in the DSP IV Final Order. The public statements stated that the OCA intervened in the proceedings to ensure that the provisions in the settlement were appropriately implemented, including the 2016 Clawback Charge provisions. (R.R. at 128a.)

[10] The Motion for Judgment on the Pleadings is not part of the Reproduced Record. *But see* R.R. at 125a-38a (ALJ Decision, January 23, 2017, granting the motion, in part, at pages 4-6, summarizing the Companies' arguments).

9

programs was voluntary; therefore, the purchase of EGS receivables was not a "rate" under the Code.

Respond Power filed replies to the new matter, and answers to the motions. (R.R. at 107a-24a.) Respond Power asserted that the complaints did not constitute a collateral attack on the DSP IV Final Order. Rather, it argued that because the Clawback Charge was contained in the Companies' tariffs, they constituted rates that are subject to section 1301 of the Code, 66 Pa.C.S. §1301, which requires them to be just and reasonable. Respond Power contended that, even though it did not participate in the DSP IV proceedings, it was entitled to file a complaint against an existing tariff at any time under section 701 of the Code, 66 Pa.C.S. §701.

By interim order dated January 23, 2017, the ALJ granted the Companies' motions for judgment on the pleadings, in part. (R.R. at 125a-38a.) The ALJ ordered that the issues concerning the validity and reasonableness of the Clawback Charge provisions in Respond Power's complaints be denied, but referred Respond Power's issue concerning the computation of the Clawback Charge for hearing.

On January 26, 2017, Respond Power filed a Petition for Interlocutory Review with the Commission, seeking review of the ALJ's Interim Order. By Order entered July 13, 2017, the Commission granted Respond Power's Petition for Interlocutory Review because it determined Respond Power was entitled to be heard on its complaints. (R.R. at 140a-61a.) Subsequently, the parties exchanged written pre-served testimony.

Respond Power presented the written testimony of one witness, Adam Small, who is Respond Power's General Counsel. Mr. Small testified that Respond Power received actual service of the Companies' DSP IV filing and conceded that the Clawback Charge provision was discussed in several portions of that legal pleading

10

and in supporting testimony and exhibits accompanying the pleading. (R.R. at 214a-15a.) He testified, however, that he "did not realize that the Companies were proposing to modify the POR programs [that had been previously] approved during the DSP III proceedings." (R.R. at 215a.) He stated that neither the Notice published in the *Pennsylvania Bulletin* nor the Notice of Prehearing Conference "contained any information about the proposal to modify the 2015-2017 POR Programs as part of the DSP IV proceeding." (R.R. at 216a.)

Mr. Small opined that applying the Clawback Charge provision to Respond Power would be "unjust and unreasonable" because (1) the use of historical data in the charge's screening measures constitutes unlawful retroactive ratemaking; and (2) the "structure" of the charge, including the service periods to which the written-off amounts relate, allegedly made it inequitable as applied to Respond Power. (R.R. at 179a-92a.)

The Companies, in turn, submitted testimony by their witness, Kimberlie Bortz, responding to Mr. Small's "unjust and unreasonable" arguments. Ms. Bortz explained that the Clawback Charge provision is an administrative charge or fee for POR participation applied to EGSs which, based on objective criteria, exhibit characteristics that correlate with the risk of generating accounts receivable having much higher write-off ratios than the general EGS population. (R.R. at 256a-70a.) Ms. Bortz also testified that Respond Power was identified based on applicable data as one of the EGSs whose mode of operation, product mix, and pricing policies correlated with the risk of extremely high uncollectible accounts expense. (R.R. at 253a-54a.) An evidentiary hearing was held on February 1, 2018, at which the parties' witnesses were presented for cross-examination.

11

On April 20, 2018, the ALJ issued an Initial Decision, recommending the dismissal of Respond Power's complaints. (ALJ Decision, 4/20/18, R.R. at 372a-409a.) The ALJ found that section 316 of the Code, 66 Pa.C.S. §316, barred Respond Power from litigating issues related to the reasonableness of the Clawback Charge provision that Respond Power had the opportunity to litigate in the Companies' DSP IV proceeding. (ALJ 4/20/18 Decision at 24, R.R. at 396a-98a.) Citing *Shenango Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 686 A.2d 910, 914 (Pa. Cmwlth. 1996), the ALJ noted that tariff provisions submitted to and approved by the Commission are *prima facie* reasonable. (ALJ 4/20/18 Decision at 25, R.R. at 396a.) Employing the heavy burden of proof applicable to challenges pursuant to 66 Pa. C.S. §701, the ALJ concluded that Respond Power failed to demonstrate, by a preponderance of the evidence, that facts and circumstances had changed so drastically since issuance of the DSP IV Final Order, so as to render application of the Clawback Charge provision unreasonable. The ALJ explained that to permit Respond Power to relitigate issues already litigated by the parties in the DSP IV proceedings, without demonstrating that a change in facts or circumstances has occurred since the Commission approved the provisions, would be to permit a collateral attack on the DSP IV Final Order. (ALJ 4/20/18 Decision at 26, 28-29, R.R. at 397a, 399a-400a.)

Addressing next Respond Power's due process argument that the Companies' conversion of its POR program from "without recourse" to "with recourse" occurred without adequate notice to Respond Power, the ALJ concluded the argument was also without merit. (ALJ 4/20/18 Decision at 31, R.R. at 402a.) The ALJ found that Respond Power had notice of the DSP IV proceedings and the Clawback Charge provisions and opportunity to be heard, but made the decision not to intervene. The ALJ found that the DSP IV petitions provided adequate information to

12

allow Respond Power to answer and challenge their specificity. For these reasons, the ALJ concluded that Respond Power had notice and opportunity to be heard, and its due process rights were adequately protected. (ALJ 4/20/18 Decision at 31-32, R.R. at 402a-03a.)

Turning to Respond Power's assertion that the imposition of the Clawback Charge constituted impermissible retroactive ratemaking, the ALJ found that the Clawback Charge was not a rate, and that using historic data to identify EGSs which will most likely impose higher costs did not make the Clawback Charge retroactive. (ALJ 4/20/18 Decision at 34, R.R. at 405a.) Lastly, the ALJ found that Respond Power failed to identify any computational errors in the calculation of the 2016 and 2017 Clawback Charge.

Respond Power filed exceptions on May 10, 2018, asking the Commission to reverse the ALJ's decision and sustain its complaints. (R.R. at 411a-51a.) The Companies filed replies to exceptions on May 21, 2018. (R.R. at 453a-80a.)

**The Commission's Decision**

By order entered on June 13, 2019, the Commission concurred in the Initial Decision and dismissed the complaints. The Commission held that Respond Power was attempting "a collateral attack on findings and determinations reached in prior Commission orders" that were "embodied in a tariff" that became "binding upon the parties." (Commission Decision, 6/13/19 at 56.) Therefore, "the preclusive effect of Section 316 [of the Code, 66 Pa.C.S. §316,]" was "properly applied in this case." *Id.*

Although the Commission found that section 316 of the Code foreclosed Respond Power's complaints, the Commission nonetheless addressed the substance of

13

Respond Power's argument that the Clawback Charge allegedly violated the prohibition against retroactive ratemaking. The Commission initially expressed that it did not need to address, in depth, whether the administrative charge represented by the Clawback Charge was a "rate," *per se*, under the Code. *Id.* at 46. It was more germane, in the Commission's view, that the participation of an EGS in a POR program "is voluntary and as such, the EGS has implicitly assented to modifications of the program, assuming such modifications are reviewed and approved by the Commission according to procedural due process." *Id.* The Commission further found that the Clawback Charge applied prospectively; the use of historical data to identify the characteristics of EGSs posing a greater risk of generating excessive uncollectible accounts receivable does not make it "retroactive"; and, therefore, Respond Power's retroactive ratemaking argument had "no merit" even if the prohibition against retroactive ratemaking was applicable. *Id.* at 47.

Regarding Respond Power's argument that its due process rights were violated, the Commission found that Respond Power was given adequate notice and an opportunity to be heard in the proceeding where the Clawback Charge was litigated and approved, but Respond Power decided not to participate, unlike other EGSs and RESA, the trade association for EGSs, which intervened and addressed the Companies' proposal. *Id.* at 41. Summarizing the evidence on this issue, the Commission found that "[a]s acknowledged by Respond [Power], it was served by the DSP IV Joint Petition and the accompanying testimonies initiating the DSP IV proceedings which contained an explanation of the proposed [C]lawback [Charge] mechanism." *Id.* at 40.

On June 28, 2019, Respond Power filed a petition for reconsideration of the Commission's June 13, 2019 order, which the Commission denied on February 6, 2020. (R.R. at 547a-65a.) Respond Power now appeals, raising the following issues:

14

1. Did the Commission err when it found that Respond Power was precluded by section 316 of the Code from challenging the application of the Companies' tariff provision because the Commission had approved the Clawback Charge mechanism in May 2016?

2. Did the Commission err as a matter of law by permitting two electric utilities to engage in retroactive ratemaking?

3. Did the Commission err as a matter of law and violate fundamental principles of due process by allowing two electric utilities to retroactively, and without notice, modify the terms of their purchase of receivables programs?

## Standard and Scope of Review

The Commonwealth Court's scope of review of a Commission order is limited. 2 Pa.C.S. §704. The Court may reverse a Commission decision only if the petitioner demonstrates that the Commission made findings not supported by substantial evidence, made a clear error in law, or violated a petitioner's constitutional rights. *Chester Water Authority v. Pennsylvania Public Utility Commission*, 868 A.2d 384, 389 (Pa. 2005); *Retail Energy Supply Association v. Pennsylvania Public Utility Commission*, 185 A.3d 1206, 1220 (Pa. Cmwlth. 2018); *see also Popowsky v. Pennsylvania Public Utility Commission*, 910 A.2d 38, 48 (Pa. 2006); *Bethlehem Steel Corp. v. Pennsylvania Public Utility Commission*, 713 A.2d 1110, 1113-14 (Pa. 1998).

As to issues of law, this Court's review is *de novo*. In conducting that review, the Commission's "interpretations of the Code … and its own regulations are entitled to great deference and should not be reversed unless clearly erroneous." *NRG Energy, Inc. v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 58 C.D.

15

2019, filed June 2, 2020) (unreported) 2020 WL 2843488, at *9 (internal quotations and citations omitted); *accord Popowsky v. Pennsylvania Public Utility Commission*, 706 A.2d 1197, 1203 (Pa. 1997).

As to issues of fact, this Court's standard of review is limited to determining if there is "substantial evidence" to support the Commission's findings. *Retail Energy Supply*, 185 A.3d at 1220. This Court has held repeatedly that it will not substitute its judgment for the Commission's judgment "when substantial evidence supports the PUC's decision on a matter within the [C]ommission's expertise" and that "[j]udicial deference is even more necessary when the statutory scheme is technically complex." *Id.* (internal citations and quotations omitted); *see also Popowsky*, 706 A.2d at 1203; *McCloskey v. Pennsylvania Public Utility Commission*, 127 A.3d 860, 871 (Pa. Cmwlth. 2015); *City of Lancaster (Water) v. Pennsylvania Public Utility Commission*, 769 A.2d 567 (Pa. Cmwlth. 2001).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Retail Energy Supply*, 185 A.3d at 1228 n.34. This Court has held that its review must focus on "whether there is rational support in the record, when viewed as a whole, for the agency action" and, in order to reverse, it must find that the agency's findings are "totally without support in the record." *Emporium Water Co. v. Pennsylvania Public Utility Commission*, 955 A.2d 456, 463 (Pa. Cmwlth. 2008).

### Section 316 of the Code

We address first Respond Power's contention that the Commission erroneously held that it was precluded under section 316 of the Code from collaterally attacking the DSP IV Final Order.

Final orders of the Commission have legal significance. As noted, section 316 provides in relevant part as follows:

> Effect of [C]ommission action. Whenever the [C]ommission shall make any rule, regulation, finding, determination or order, the same shall be prima facie evidence of the facts found and shall remain conclusive upon all parties affected thereby, unless set aside, annulled or modified on judicial review.

66 Pa.C.S. §316.

We find the Commission correctly dismissed Respond Power's complaints against the Companies in part because the complaints constituted an unlawful collateral attack on the DSP IV Final Order in violation of 66 Pa.C.S. §316.

The Commission approved the Clawback Charge provisions as part of the DSP IV proceedings, and subsequently approved the Companies' tariff filings implementing the Clawback Charge provision. (R.R. at 126a, 136a-37a.) The Commission-approved tariff provisions are presumed to be reasonable, have the full force of law, and are binding on the utilities and their customers. *Pennsylvania Electric Co. v. Pennsylvania Public Utility Commission*, 663 A.2d 281(Pa. Cmwlth. 1995); *Brockway Glass Co. v. Pennsylvania Public Utility Commission*, 437 A.2d 1067 (Pa. Cmwlth. 1981); *State Farm Fire & Casualty Co. v. PECO Energy Co.*, 54 A.3d 921 (Pa. Super. 2012); *Stiteler v. Bell Telephone Co. of Pennsylvania*, 379 A.2d 339 (Pa. Cmwlth. 1977).

"A complainant seeking to evade the effect of an existing tariff provision" must "prove that facts and circumstances have changed so drastically as to render the application of the tariff provision unreasonable." *Shenango Township Board of Supervisors*, 686 A.2d at 914. Respond Power was required to meet this burden by a preponderance of the evidence. *Samuel J. Lansberry, Inc. v. Pennsylvania Public*

17

*Utility Commission*, 578 A.2d 600 (Pa. Cmwlth. 1990), *appeal denied*, 602 A.2d 863 (Pa. 1992). To establish a preponderance of the evidence, Respond Power had to present evidence more convincing, by even the smallest amount, than that presented by the Companies, which it failed to do. *Se-Ling Hosiery v. Margulies*, 70 A.2d 854 (Pa. 1950). The burden is a heavy one because tariff provisions submitted to and approved by the Commission are considered *prima facie* reasonable. *Zucker v. Pennsylvania Public Utility Commission*, 401 A.2d 1377, 1380 (Pa. Cmwlth. 1979) (Commission-approved tariffs are prima facie reasonable).

The Commission correctly concluded that Respond Power failed to meet this burden. Respond Power presented no evidence that a change in facts or circumstances had occurred, since the Commission had approved the Clawback Charge provision as *prima facie* reasonable.

Further, decisions of Commonwealth administrative agencies, such as the Commission, are entitled to *res judicata* and collateral estoppel effect where the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, which parties had an opportunity to litigate. *See Kentucky-West Virginia Gas v. Pennsylvania Public Utility Commission*, 721 F. Supp. 710 (M.D. Pa. 1989), *aff'd*, 899 F.2d 1217 (3d Cir. 1990). In the DSP IV Final Order, the Commission acted in a judicial capacity and resolved the issues that Respond Power had the opportunity to litigate, and numerous parties did in fact litigate, concerning the reasonableness of the Clawback Charge provision. Section 316 of the Code barred Respond Power from relitigating the issues raised and resolved in the DSP IV proceedings, and restricted Respond Power to litigating only new and novel issues that arose since the Commission approved the Clawback Charge, of which Respond Power presented none. As the Commission correctly concluded, since Respond Power failed to take advantage of its

18

opportunity to litigate the Clawback Charge issue at the first opportunity, section 316 of the Code applied to its complaints and barred it from relitigating that issue before the Commission.

### Due Process

In an apparent effort to circumvent the preclusive effect of section 316 of the Code, Respond Power argues that its due process rights were violated because it was not provided with adequate notice that the DSP IV Petition included a proposed Clawback Charge provision that uses historical data and that the first charge would be assessed in September 2016. It argues that, had it received sufficient notice of such, it would have intervened and participated.

Although Respond Power does not dispute that it received actual service of the Companies' DSP IV filing, it nevertheless argues that service of the Petition and the publication notice in the *Pennsylvania Bulletin* were inadequate for two reasons: (1) the proposed changes to the DSP III POR program, which included the Clawback Charge, were buried in the massive filing, and (2) the title of the DSP IV Petition and the notice published in the *Pennsylvania Bulletin* described the DSP IV Petition as seeking approval of a default service program for the future period beginning June 1, 2017, through May 31, 2019.

Like the Commission, we conclude Respond Power's decision not to read the DSP IV Petition does not mean that it was deprived of due process.

To satisfy due process, notice must be reasonably calculated to apprise interested parties of the proposal and afford them an opportunity to present their objection. *Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission*, 224 A.3d 450 (Pa. Cmwlth. 2020).

Here, the DSP IV Petition, supporting testimony, and accompanying Supplier Tariff supplements clearly apprised Respond Power of the terms of the proposed Clawback Charge provision, why it was being proposed and how it would be calculated. The Commission credited the testimony of Ms. Bortz, who explained that Respond Power had to read no further than the second paragraph of the DSP IV Petition (pages 2-3) to see that the Companies and their affiliates were proposing revisions to their POR programs. The nature of those changes was provided in three pages of text under the bolded and capitalized heading of "Section V ("PURCHASE OF RECEIVABLES") Subsection A ("EGS-Related Write-Offs")" of the DSP IV Petition. (R.R. at 240a-41a, 250a-51a.) The Clawback Charge provision was also discussed at length in the written testimony of Ms. Bortz attached to the DSP IV Petition and in the summary of Ms. Bortz's testimony at page 5 of the DSP IV Petition. (R.R. at 387a.)

Relatedly, Respond Power argues that it was deprived of *statutory* notice pursuant to section 703 of the Code, which authorizes the Commission to rescind or amend any order made by it at any time, only after notice and opportunity to be heard by affected parties. 66 Pa.C.S. §703(g). Respond Power argues that nothing in the Commission's notice in the *Pennsylvania Bulletin* suggested that the filing could result in the "mid-course modification" of an existing program previously approved by the Commission. Respond Power contends that the Commission, therefore, had a legal obligation to provide Respond Power with notice that it was modifying its DSP III Order, and to give Respond Power an opportunity to be heard. It submits that because this step was not taken, its due process rights were violated and the Clawback Charge should be rendered null and void.

We reject this argument as well. Respond Power has provided no authority, and we are aware of none, which required the statutory notices to apprise Respond Power, beyond what was provided.

In summary, the evidence refutes the central premise of Respond Power's appeal. Respond Power failed to raise its objections to the Clawback Charge when it had the opportunity to do so in the DSP IV proceedings. Respond Power's due process rights were fully protected by its actual receipt of service of all the documents that initiated the proceeding culminating in the Commission's approval of the Clawback Charge. Therefore, as required by section 316 of the Code, the Commission did not err when it rejected Respond Power's unlawful attempt to collaterally attack the DSP IV Final Order.

**Retroactive Ratemaking**

Lastly, we find that the Commission's approval of the Clawback Charge provision in the DSP IV Final Order did not constitute retroactive ratemaking. Respond Power argues that the Clawback Charge results in compensation being paid by Respond Power to the Companies. As such, it is a rate and it may not be retroactively assessed. Respond Power reasons that under the Code, "rate" is very broadly defined to include "[e]very individual, or joint fare, toll, charge, rental or other compensation whatsoever of any public utility . . . made, demanded, or received for any service." 66 Pa.C.S. §102 (relating to definitions). It contends that the Companies' purchase of Respond Power's receivables, in full and without recourse, is the "service" provided by the Companies, and an invoice for $484,797.69 for the Clawback Charge, based on the write-offs of uncollectible supply charges from September 1, 2015, through August 31, 2016, constituted a demand by the Companies for "compensation." Respond Power further differs with the Commission's position that Respond Power's

21

voluntary participation negates a finding that the Clawback Charge is a rate. Respond Power maintains that the distinction is without a difference. It argues that, contrary to the rule against retroactive ratemaking, the Commission allowed the Companies to make after-the-fact changes to the terms of their voluntary POR programs, by converting them from "nonrecourse" to "with recourse," which resulted in an unexpected charge being assessed against Respond Power.

We agree with the Commission's assessment that imposition of the Clawback Charge did not constitute retroactive ratemaking. Respond Power has erroneously interpreted the retroactive ratemaking prohibition.

First, the Commission-approved Clawback Charge in the DSP IV Petition is not a rate. It therefore follows that the rule against retroactive ratemaking does not apply. The Code at section 102 (Definitions) defines rate as follows:

> "Rate." Every individual, or joint fare, toll, charge, rental, or other compensation whatsoever of any public utility, or contract carrier by motor vehicle, made, demanded, or received for any service within this part, offered, rendered, or furnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender, or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and whether received directly or indirectly, and any rules, regulations, practices, classifications or contracts affecting any such compensation, charge, fare, toll, or rental.

66 Pa.C.S. §102.

A rate embraces all compensation received by a public utility for service it renders to a customer. *Penn-Harris Hotel Co. v. Pennsylvania Public Utility Commission*, 71 A.2d 853 (Pa. Super. 1950). In *Penn Harris*, the Superior Court held that the definition of rate contained in the Public Utility Law, Act of May 28, 1937, P.L. No. 1053, did not cover services rendered to the public utility for which the public

22

utility expends money.[11]  Here, the Clawback Charge is not compensation received by the Companies for service they render to Respond Power and, therefore, it is not a rate. Since the Clawback Charge provision is not a rate, any prohibition concerning retroactive ratemaking is not applicable to the clawback provisions.

## Conclusion

In sum, we find that the Commission committed no error of law, nor did it abuse its discretion by dismissing Respond Power's collateral attack on the Commission's Order approving the Companies' DSP IV Petition and the included Clawback Charge provision.  Respond Power was not denied any constitutional due process, as it was given more than adequate notice and opportunity to participate in the DSP IV proceedings, as other EGSs did, but by its own admission, chose not to do so. Any prohibition against retroactive ratemaking is not applicable in this circumstance.

Accordingly, the final orders of the Commission are affirmed.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in this decision.

---

[11] In 1978, the General Assembly repealed the Act of May 28, 1937, P.L. No. 1053, formerly 66 P.S. §§1101-1562, and enacted the Act of July 1, 1978, P.L. 598, No. 116, the existing Public Utility Code.  The current Public Utility Code at 66 Pa.C.S. §102, defining rate, contains almost identical language as that found in the former section 2 of the Public Utility Law, formerly 66 P.S. §102.  Since the provision at 66 Pa.C.S. §102 is a reenactment of the provisions of the prior Public Utility Law, decisions interpreting the provisions that existed prior to 1978 continue to be applicable. *County of Chester v. Pennsylvania Public Utility Commission*, 408 A. 2d 552 (Pa. Cmwlth. 1979); *Pittsburgh & Shawmut R.R. Co. v. Pennsylvania Public Utility Commission*, 14 A.2d 903 (Pa. Super. 1940).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Respond Power, LLC, : 
        Petitioner : 
       :    No. 260 C.D. 2020
      v. : 
       : 
Pennsylvania Public Utility : 
Commission, : 
        Respondent : 

## ***ORDER***

AND NOW, this 9th day of February, 2021, the June 13, 2019, and February 6, 2020 Orders of the Pennsylvania Public Utility Commission are hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge